Alan G. PALAZZO et al.

v.

Stephen D. ALVES.

No. 2006–172–Appeal.

Supreme Court of Rhode Island.

April 3, 2008.

146

Jean Scott, Esq., for petitioner.

Christopher Friel, Esq., for respondent.

Present: WILLIAMS, C.J.,
GOLDBERG, SUTTELL, and
ROBINSON, JJ.

## O P I N I O N

Justice ROBINSON for the Court.

The plaintiffs, Alan G. Palazzo and William B. Palazzo, appeal to this Court from a Superior Court judgment dismissing their amended complaint, in which they sought damages pursuant to G.L. 1956 chapter 33 of title 9[1] and in which they also included common law claims for malicious prosecution and abuse of process.

On appeal, plaintiffs contend: (1) that the hearing justice erred in determining that they were precluded from bringing a separate SLAPP action for punitive and compensatory damages after having successfully litigated under the aegis of that statute in an earlier case and (2) that the hearing justice erred in determining that their allegations of malicious prosecution and abuse of process were precluded.

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

## Facts and Travel

The material facts in this case are undisputed. On November 16, 2001, the present defendant (Stephen D. Alves)[2] filed a civil suit against the present plaintiffs (Alan G. and William B. Palazzo). In that suit, Senator Alves alleged that statements made by the Palazzos at public meetings and written by them in a series of letters to the editor that were published in The Kent County Daily Times[3] were slanderous and libelous and placed him in a false light in violation of his statutory right to privacy. The Palazzos responded by filing a motion to dismiss pursuant to Rule 12(b)(6) of the Superior Court Rules of Civil Procedure,[4] arguing that Senator Alves' complaint constituted a SLAPP suit that fell within the reach of the anti-SLAPP statute.[5] In their motion to dismiss, the Palazzos also sought an award of costs and attorneys' fees pursuant to § 9–33–2(d) of the anti-SLAPP statute.

At a hearing on January 28, 2002, a justice of the Superior Court determined that the motion to dismiss should be treated as a motion for summary judgment, and she continued the hearing on the motion to a later date. A hearing was held on March 8, 2002; thereafter, on March 14, the hearing justice granted summary judgment in favor of Alan Palazzo, finding that his statements were protected by the anti-SLAPP statute. In so ruling, she reasoned that, because the statements related

---

1. General Laws 1956 chapter 33 of title 9 is entitled, "Limits on Strategic Litigation Against Public Participation." It is often referred to as the anti-SLAPP statute. ("SLAPP" is the acronym for strategic litigation against public participation.)

2. In November of 2001, defendant represented the 19th Senatorial District in the Rhode Island General Assembly (as he still does), and he was also serving on the school building committee in the Town of West Warwick.

3. The Kent County Daily Times is a newspaper published by Hometown Newspapers, Inc.

4. Rule 12(b)(6) of the Superior Court Rules of Civil Procedure provides in pertinent part:

 "(b) *How Presented.* Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: * * * (6) [a motion to dismiss for] failure [of the pleading] to state a claim upon which relief can be granted * * *."

5. *See* note 1, *supra.*

to an issue of public concern and were not baseless, they were entitled to conditional immunity under the anti-SLAPP statute. The hearing justice also awarded costs and reasonable attorneys' fees to Alan Palazzo.

The hearing justice denied the motion with respect to William Palazzo, however, on the ground that it was less clear to the court that his statements "were of a type envisioned by the Legislature in enacting the anti-SLAPP statute." Nevertheless, the claims against William Palazzo were eventually settled and dismissed with prejudice.

Thereafter, Senator Alves appealed the decision with respect to Alan Palazzo to this Court. On August 4, 2004, we affirmed the hearing justice's grant of summary judgment. *Alves v. Hometown Newspapers, Inc.*, 857 A.2d 743 (R.I.2004).[6] Subsequently, on September 27, 2004, Senator Alves and Alan Palazzo executed a stipulation in which they agreed that the judgment would be satisfied by Senator Alves paying the sum of $33,000, which would be deemed to include costs and interest.

Several months later, on March 31, 2005, the Palazzos commenced the instant action against Senator Alves, seeking compensatory damages, punitive damages (in the amount of $2 million), costs, interest, and reasonable attorneys' fees.[7] In their complaint, the Palazzos allege that the original suit filed by Senator Alves was brought to abridge their constitutional rights; they allege that the suit was "frivolous and was brought with an intent to harass the [p]laintiffs and otherwise inhibit their exercise of their right to petition and free speech." The Palazzos subsequently amended their complaint to include counts for malicious prosecution and abuse of process.

On June 20, 2005, Senator Alves filed a motion to dismiss plaintiffs' amended complaint pursuant to Rule 12(b)(6). In his memorandum in support of that motion, he argued that the action was barred by *res judicata* and collateral estoppel. He further contended that the Palazzos should have raised the claims set forth in their new civil action as compulsory counterclaims in the original action.

A hearing was held in the Superior Court on August 9, 2005, at the conclusion of which the hearing justice granted Senator Alves' motion to dismiss. In so deciding, the hearing justice ruled that the anti-SLAPP statute "does not provide * * * for a private cause of action subsequent to a determination that a claim, counterclaim or cross claim violated the statute." She also ruled that Alan Palazzo's claims in the case before her were precluded due to the fact that he had been the beneficiary of a

---

**6.** On January 26, 2004, prior to the issuance of this Court's decision with respect to the original civil action, counsel for both sides executed a stipulation; that stipulation dismissed with prejudice all of the remaining claims that were not at issue in the then-pending appeal. In that stipulation, the parties also agreed that Senator Alves would compensate the Palazzos for their costs in the amount of $1761.40.

**7.** Lawsuits like this one, which come about as reactions to earlier litigation that is allegedly of the SLAPP variety, are often referred to as "SLAPP-back suits."

When permitted, "SLAPP-back suits" are countersuits filed by SLAPP victims in which damages are sought from the original plaintiff for abusing the legal process, for malicious prosecution, and/or for interference with the exercise of constitutional rights of free expression. *See, e.g.*, John C. Barker, *Common–Law and Statutory Solutions to the Problem of SLAPPs*, 26 Loy. L.A. L.Rev. 395, 431–32 (1993); Edmond Costantini and Mary Paul Nash, SLAPP/SLAPPback: The Misuse of Libel Law For Political Purposes and a Countersuit Response, 7 J.L. Pol. 417, 423 (1991).

judgment in his favor in the initial action and had thereafter agreed that said judgment could be satisfied by Senator Alves paying him the sum of $33,000.

With respect to William Palazzo, the hearing justice found that, rather than continuing to litigate in the initial action, he had opted to settle. The hearing justice further concluded that "the proper method would have been to raise the anti-SLAPP [s]tatute and prosecute the claim, rather than, as [William Palazzo] did, settle the suit, * * * accept an award and then file a subsequent lawsuit."

Finally, the hearing justice noted that the Palazzos had not "specifically request[ed] punitive and compensatory damages in the original action," and on that basis she ruled that their subsequent claim for same in the present action was precluded. The Palazzos filed the instant appeal on September 7, 2005.[8]

On appeal, the Palazzos argue that they were not precluded from bringing a separate cause of action for compensatory and punitive damages based upon the anti-SLAPP statute. They contend that the anti-SLAPP statute provides for a two-step process. In the first step of what they consider to be the process, a defendant named in a civil action which he or she considers to constitute a SLAPP suit should claim conditional immunity pursuant to the anti-SLAPP statute; if that defendant's claim of conditional immunity under the anti-SLAPP statute is upheld, the court will dismiss the plaintiff's complaint and will award the defendant attorneys' fees and costs. In the second step of the process that plaintiffs envision, after the dismissal of the initial suit, a SLAPP defendant may then choose to file a sepa-

rate SLAPP-back suit, invoking the anti-SLAPP statute and/or common law causes of action and seeking compensatory and punitive damages on the ground that the plaintiff's allegations in the initial action were frivolous and were brought with the intent to harass or to otherwise inhibit the right to petition and/or the right of free speech. In addition, the Palazzos contend that the issues of compensatory and punitive damages pursuant to the anti-SLAPP statute were not before the hearing justice who dismissed the original civil action and thus are not barred by *res judicata.*

With respect to their malicious prosecution and abuse of process claims, the Palazzos contend on appeal that, because those claims were not pleaded in the original civil action, they are similarly not barred by *res judicata.*

### Standard of Review

 In reviewing a hearing justice's decision with respect to a Rule 12(b)(6) motion to dismiss, this Court examines the allegations contained in the plaintiff's complaint, assumes them to be true, and views them in the light most favorable to the plaintiff. *Ellis v. Rhode Island Public Transit Authority,* 586 A.2d 1055, 1057 (R.I.1991); *see also Builders Specialty Co. v. Goulet,* 639 A.2d 59, 60 (R.I.1994); *Rhode Island Affiliate, ACLU, Inc. v. Bernasconi,* 557 A.2d 1232, 1232 (R.I.1989). "[T]he sole function of a motion to dismiss is to test the sufficiency of the complaint," and thus this Court need not look further than the complaint in conducting our review. *See Bernasconi,* 557 A.2d at 1232. The grant of a Rule 12(b)(6) motion to dismiss is appropriate "when it is clear beyond a reasonable doubt that the plain-

---

8. We note that final judgment was not entered until April 24, 2006; however, a prematurely filed notice of appeal in such a situation is not a bar to review by this Court. *In re Brooklyn M.,* 933 A.2d 1113, 1121 n. 15 (R.I.2007); *McBurney v. The GM Card,* 869 A.2d 586, 589 n. 3 (R.I.2005).

tiff would not be entitled to relief from the defendant under any set of facts that could be proven in support of the plaintiff's claim." *Ellis*, 586 A.2d at 1057; *see also Builders*, 639 A.2d at 60.

## Analysis

■ The General Assembly enacted the anti-SLAPP statute in order to "prevent vexatious lawsuits against citizens who exercise their First Amendment rights of free speech and legitimate petitioning" under the United States and Rhode Island Constitutions "by granting those activities conditional immunity from punitive civil claims." *Alves*, 857 A.2d at 752.[9] Section 9–33–2 provides that, when that conditional immunity attaches, it renders "the petitioner or speaker immune from any civil claims for statements, or petitions, that were not sham by virtue of being objectively or subjectively baseless." *Global Waste Recycling, Inc. v. Mallette*, 762 A.2d 1208, 1211 (R.I.2000).

■ By the nature of their subject matter, anti-SLAPP statutes require meticulous drafting. On the one hand, it is desirable to seek to shield citizens from improper intimidation when exercising their constitutional right to be heard with respect to issues of public concern. On the other hand, it is important that such statutes be limited in scope lest the constitutional right of access to the courts (whether by private figures, public figures, or public officials) be improperly thwarted.[10] There is a genuine double-edged challenge to those who legislate in this area.[11]

## I

### Compensatory and Punitive Damages

In contrast with some of our previous cases that have dealt with the anti-SLAPP statute, the issue in this case is not whether plaintiffs' actions fall within the protections afforded by the statute. Instead, the instant case requires us to address the manner and method by which aggrieved individuals may seek damages for having been named as defendants in lawsuits brought primarily to chill the valid exercise of their First Amendment rights of

9. Section 9–33–1 of the anti-SLAPP statute contains explicit findings expounding on this purpose:

"**Findings.**—The legislature finds and declares that full participation by persons and organizations and robust decision of issues of public concern before the legislative, judicial, and administrative bodies and in other public fora are essential to the democratic process, that there has been a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances; that such litigation is disfavored and should be resolved quickly with minimum cost to citizens who have participated in matters of public concern."

10. It should go without saying that, when faced with anti-SLAPP filings, the courts should give careful consideration to the negative effect that such filings can have on the

right of access to the courts and should scrutinize same with special care. Great caution should be the watchword in this area.

11. A law review author has nicely summarized the two important values that anti-SLAPP legislation must respect and protect:

"SLAPPs pit two sets of fundamental constitutional rights against each other: (1) defendants' rights of free speech and petition and (2) plaintiffs' rights of access to the judicial system and rights to non-falsely maligned reputations. Solutions to the SLAPP problem must not compromise any of these rights. Plaintiffs must be able to bring suits with reasonable merit and defendants must be protected from entirely frivolous intimidation * * * in public affairs." John C. Barker, *Common–Law and Statutory Solutions to the Problem of SLAPPs*, 26 Loy. L.A. L.Rev. 395, 397–98 (1993) (footnotes omitted).

speech and petition. The Palazzos contend that the statute provides for a two-step process; they argue that aggrieved parties may seek to recover SLAPP-related damages in a subsequent civil action that is entirely separate from the initial civil action in which they prevailed on a dispositive motion based on the anti-SLAPP statute. We are not persuaded by their contention.

■ The relevant portion of the anti-SLAPP statute provides:

"If the court grants the motion asserting the immunity established by this section, * * * the court *shall* award the prevailing party costs and reasonable attorney's fees * * *. The court *shall* award compensatory damages and *may* award punitive damages upon a showing by the prevailing party that the responding party's claims, counterclaims, or cross-claims were frivolous or were brought with an intent to harass the party or otherwise inhibit the party's exercise of its right to petition or [to] free speech under the United States or Rhode Island constitution." Section 9–33–2(d) (emphasis added).

Contrary to plaintiffs' assertion, the anti-SLAPP statute cannot reasonably be read as providing a mechanism by which a party may file a *separate* "SLAPP-back" lawsuit. Rather, it is clear to us that the statute should be read as providing that, *in the same civil action* in which a party has successfully invoked the conditional immunity granted by the anti-SLAPP statute, the court in that case "shall award compensatory damages and may award punitive damages * * *." It is utterly apparent that the statute envisions a *unitary* proceeding—one in which all contentions of the parties would in the end be "wrapped up." We note that both sentences in the relevant statutory language refer to what *the court* may or shall do if certain criteria are met with respect to the civil action before the court; we understand that term to refer to the court in which the anti-SLAPP defense was raised. There is no suggestion in the statute that there should subsequently be a separate civil action. It is our conclusion that, if the court grants a motion invoking SLAPP immunity, the prevailing party shall be awarded, by that same court, compensatory damages and perhaps punitive damages upon a showing [12] that the non-prevailing party's claims "were frivolous or were brought with an intent to harass the party or otherwise inhibit the party's exercise of its right to petition or free speech under the United States or Rhode Island constitution."

Prior to the enactment of the anti-SLAPP statute, persons subject to what they believed were baseless lawsuits had to undertake a two-step process in order to recover damages. First, they had to prevail in the initial civil action; then, if they chose to seek redress, they had to commence a second lawsuit against the original plaintiff for damages suffered, typically alleging malicious prosecution and possibly abuse of process. This process changed with the enactment of the anti-SLAPP statute by the General Assembly. The anti-SLAPP statute renders it unnecessary for an aggrieved party to commence a second suit in cases involving the wrongful abridgement of a person's First Amendment speech and petition rights; instead it provides for the possible recovery of compensatory and punitive damages in

**12.** Section 9–33–2(d) makes explicit mention of "a showing by the prevailing party * * *." Litigants must not be passive in such a context, but rather must be forthcoming as to their desire to make such a "showing." *See Arena v. City of Providence,* 919 A.2d 379, 395 (R.I.2007) (citing *Puleio v. Vose,* 830 F.2d 1197, 1203 (1st Cir.1987)).

the context of the SLAPP suit itself after the necessary evidentiary showing. Unlike plaintiff's proposed two-step process, this procedure is consistent with the overall objective of the anti-SLAPP statute to provide for a quick resolution with minimal costs.[13]

■ In the original civil action, the Palazzos filed a motion to dismiss based upon the anti-SLAPP statute, in which motion they sought "an Order awarding them their costs and attorneys' fees pursuant to R.I.G.L. § 9–33–2(d)." Nothing prevented them from also seeking compensatory and punitive damages in that same motion or upon being notified that their anti-SLAPP motion had been granted. By not requesting compensatory and punitive damages in the original civil action, their claims for such damages are deemed to have been waived.

Moreover, the Palazzos' claims in the instant case are intertwined with the facts that gave rise to the original SLAPP action, and thus their claims could have been litigated in the original action; accordingly, their claims are also barred by the doctrine of *res judicata.*

■ When invoked, the doctrine of *res judicata* "makes a prior judgment in a civil action between the same parties conclusive with regard to any issues that were litigated in the prior action, or, that *could have been presented and litigated therein.*" *ElGabri v. Lekas,* 681 A.2d 271, 275 (R.I. 1996) (emphasis added); *see also Garganta v. Mobile Village, Inc.,* 730 A.2d 1, 4–5 (R.I.1999). As we have stated, the doctrine "serves as an absolute bar to a second cause of action where there exists identity of parties, identity of issues, and finality of judgment in an earlier action." *Gaudreau v. Blasbalg,* 618 A.2d 1272, 1275 (R.I.1993) (internal quotation marks omit-

ted); *see also Garganta,* 730 A.2d at 4. Moreover, the doctrine of *res judicata* extinguishes a party's claims even if that party is "prepared in a second action to present evidence or grounds or theories of the case not presented * * * in the first action, or to seek remedies or forms of relief not demanded in that action." *El-Gabri,* 681 A.2d at 276. In the instant case, the parties and the issues are identical, and the Palazzos' claims for the statutorily authorized compensatory and punitive damages could have, and should have, been made in the original action. Consequently, the Palazzos' claims for same are precluded because they failed to do so at that time.

For the aforementioned reasons, we affirm the granting of defendant's motion to dismiss the Palazzos' claims for compensatory and punitive damages under the anti-SLAPP statute.

## II

### The Malicious Prosecution Claim

■ This Court has defined malicious prosecution "as a suit for damages resulting from a prior criminal or civil legal proceeding that was instituted maliciously and without probable cause, and that terminated unsuccessfully for the plaintiff therein." *Clyne v. Doyle,* 740 A.2d 781, 782 (R.I.1999) (internal quotation marks omitted); *see also Hoffman v. Davenport–Metcalf,* 851 A.2d 1083, 1091 (R.I. 2004); *Toste Farm Corp. v. Hadbury, Inc.,* 798 A.2d 901, 907 (R.I.2002). Moreover, "an action for malicious prosecution based on a prior civil suit may be maintained only where it is established that the prior suit resulted in a special injury to the defendant in that suit." *Ring v. Ring,* 102 R.I. 112, 114–15, 228 A.2d 582, 584 (1967);

---

13. *See* note 9, *supra* and accompanying text.

*see also Hoffman,* 851 A.2d at 1091; *Toste Farm Corp.,* 798 A.2d at 907. Although the tort of malicious prosecution has long been recognized in this jurisdiction, it is nevertheless a disfavored cause of action since it "tend[s] to deter the prosecution of crimes and/or to chill free access to the courts." *Brough v. Foley,* 572 A.2d 63, 66 (R.I.1990); *see also Hill v. Rhode Island State Employees' Retirement Board,* 935 A.2d 608, 613 (R.I.2007); *Henshaw v. Doherty,* 881 A.2d 909, 915 n. 5 (R.I.2005); *Clyne,* 740 A.2d at 782; *Soares v. Ann & Hope of Rhode Island, Inc.,* 637 A.2d 339, 345 (R.I.1994); *Solitro v. Moffatt,* 523 A.2d 858, 862 (R.I.1987).

█ It is our opinion that the hearing justice properly granted the motion to dismiss with respect to the Palazzos' malicious prosecution claim. As we have indicated, by electing to file a motion to dismiss in the original civil action pursuant to the anti-SLAPP statute, the Palazzos lost any inchoate right to file a subsequent malicious prosecution cause of action.[14] The General Assembly obviated the need for a successful SLAPP litigant to file a subsequent lawsuit to recover damages by providing for the recovery of compensatory and punitive damages, as well as costs and attorneys' fees, within the ambit of the anti-SLAPP suit itself. The anti-SLAPP statute provides for the recovery of damages identical to those damages available in tort; as such, to allow recovery under both the anti-SLAPP statute and a malicious prosecution claim would constitute double recovery. *See Graff v. Motta,* 695 A.2d 486, 492 (R.I. 1997) ("A plaintiff's recovery against a defendant under one tort theory precludes any duplicative recovery for the same damages under some other tort theory.") (internal quotation marks omitted); *see also Vallinoto v. DiSandro,* 688 A.2d 830, 842 (R.I.1997) ("[Duplicative] recovery for the same underlying behavior is prohibited.") (internal quotation marks omitted).

Even if plaintiffs were permitted to file a separate common law malicious prosecution action after having prevailed on an anti-SLAPP motion, it is clear that they would have been unable to state a claim upon which relief could be granted.

█ First, with respect to William Palazzo, the hearing justice in this case did not err in dismissing the malicious prosecution claim because the original dispute

14. In support of their contentions on appeal, the Palazzos point to the language in § 9–33–2(d) which provides:
"Nothing in this section shall affect or preclude the right of the party claiming lawful exercise of his or her right of petition or of free speech under the United States or Rhode Island constitutions to any remedy otherwise offered by law."
They also rely on § 9–33–4, which reads:
"Nothing contained in this chapter shall be construed to limit or affect any additional constitutional, statutory, or common law protections of defendants in actions involving their exercise of rights of petition or of free speech."
As we explain in the text, however, it is utterly clear to us that these two sections (read in the context of the entire anti-SLAPP statute) signify that, if a party chooses to assert conditional immunity under the statute by filing a dispositive motion, he or she must assert at that time all claims which said party believes accrue to him or her by virtue of what that party deems to be the improper speech-related counts in the underlying action. In other words, the anti-SLAPP statute does not authorize several bites at the apple; rather, a party who avails himself or herself of that statute must take one big bite.
On the other hand, causes of action that a party may feel entitled to assert that are not connected to the filing of the SLAPP suit (and to the rights of free speech or of petition) would not be precluded. A claim for nuisance or certain prayers for injunctive relief would be examples of such. *See, e.g., Global Waste Recycling, Inc. v. Mallette,* 762 A.2d 1208 (R.I.2000).

between William Palazzo and Senator Alves was resolved in the context of a settlement and therefore did not terminate successfully or unsuccessfully for either party.[15] As this Court unequivocally held in *Nagy v. McBurney*, 120 R.I. 925, 931, 392 A.2d 365, 368 (1978), "a termination based on a compromise or settlement *is not deemed favorable.*" (Emphasis added.) *See also C.N.C. Chemical Corp. v. Pennwalt Corp.*, 690 F.Supp. 139, 141 (D.R.I.1988) ("[A] termination based on a compromise or settlement will not support a claim for malicious prosecution."); *Toste Farm Corp.*, 798 A.2d at 908.[16]

▆▆▆▆ As for Alan Palazzo, because his pleading does not allege any special injury, he has failed to assert an essential element of a malicious prosecution claim. With respect to damages in this disfavored area of the law of torts, this Court has adopted the so-called "English rule." That rule provides that "an action for malicious prosecution requires, in the absence of a person's arrest or seizure of his or her property, a showing of 'special injury' beyond the trouble, cost, and other consequences normally associated with defending oneself against an unfounded legal charge." *Jacques v. McLaughlin*, 121 R.I. 525, 525, 401 A.2d 430, 431 (1979); *see also Ring*, 102 R.I. at 114–15, 228 A.2d at 584. Alan Palazzo utterly failed to make such a showing.

For the aforementioned reasons, we conclude that the ruling of the hearing justice with respect to the malicious prosecution claim was entirely proper.

### III

### The Abuse of Process Claim

▆▆▆▆ To establish a claim of abuse of process, a plaintiff must show that "a legal proceeding, although set in motion in proper form, becomes perverted to accomplish an ulterior or a wrongful purpose for which it was not designed." *Hillside Associates v. Stravato*, 642 A.2d 664, 667 (R.I.1994); *see also Hoffman*, 851 A.2d at 1090; *Toste Farm Corp.*, 798 A.2d at 907; *Butera v. Boucher*, 798 A.2d 340, 353 (R.I. 2002); *Clyne*, 740 A.2d at 783. In order to prove abuse of process, a plaintiff must demonstrate: (1) that "the defendant instituted proceedings or process against the plaintiff" and (2) that "the defendant used these proceedings for an ulterior or wrongful purpose that the proceedings were not designed to accomplish." *Butera*, 798 A.2d at 353. As we have previously stated, the "gist of an abuse-of-process claim is the misuse of legal process to obtain an advantage, 'not properly involved in the proceeding itself * * *. [However], *even a pure spite motive is not sufficient where process is used only to accomplish the result for which it was created.*'" *Butera*, 798 A.2d at 354 (quoting *Prosser and Keeton on the Law of Torts* § 121 at 897 (W. Page Keeton 5th ed. 1984)).

▆▆▆▆ Other than plaintiffs' unsupported and conclusory allegations in their amend-

---

**15.** The disinclination of the courts to consider settlement as constituting a favorable termination for the purpose of stating a claim of malicious prosecution is consistent with "the policy of the courts of Rhode Island (and courts in general) to encourage the amicable settlement of disputes, whether by mediation or otherwise." *Ryan v. Roman Catholic Bishop of Providence*, 941 A.2d 174, 186 (R.I.2008) (citing numerous cases); *see also* Jennifer E. Sills, Comment, *SLAPPs (Strategic Lawsuits Against Public Participation): How Can The*

*Legal System Eliminate Their Appeal?*, 25 Conn. L.Rev. 547, 577 (1993).

**16.** We feel compelled to comment that we gave serious consideration to sanctioning William Palazzo and his counsel. As a matter of black letter law, his malicious prosecution claim was doomed from the outset; the filing of same raises a question as to whether it was the product of a decision made in good faith.

ed complaint,[17] nothing in the record even suggests that Senator Alves used the initial suit for an ulterior or a wrongful purpose. Accepting all the allegations in the complaint as true and resolving any doubts in favor of plaintiffs, we conclude that plaintiffs would not be entitled to relief under any conceivable set of facts. Accordingly, the motion to dismiss was properly granted with respect to the abuse of process claim.

## IV

### A Final Observation

The fact that this action was filed in the Superior Court and was then, after it was dismissed by that court, appealed to this Court is more than a little disturbing. We would have thought that venerable principles of American jurisprudence (such as the *res judicata* bar and the prohibition against double recovery), not to mention the straightforward language of § 9–33–2(d), would have counseled against the commencement of this civil action. It must be stated that we did give serious consideration to imposing sanctions even in the absence of a motion for same. In the end however, we have decided not to do so—primarily because § 9–33–2(d) has never previously been construed by us with respect to the issues discussed in this opinion. Now that we have construed those aspects of the statute, however, we would be disinclined to abstain from imposing sanctions in a similar situation in the future, whether involving these parties or others.

As we come to the conclusion of this opinion, we specifically direct the attention of the plaintiffs and their counsel to the following admonition contained in a recent opinion of ours in an unrelated case:

> "We are more than persuaded that the instant plaintiffs have had their day in court—and then some. The time has come for this litigation to end." *Northern Trust Co. v. Zoning Board of Review of Westerly*, 899 A.2d 517, 520 (R.I. 2006) (mem.).

There is nothing more to be said; this case is over. *See Arena v. City of Providence*, 919 A.2d 379, 396 (R.I.2007) ("It is time for this litigation to end."); *see also Ryan v. Roman Catholic Bishop of Providence*, 941 A.2d 174, 188 (R.I.2008); *Gunn v. Union Railroad Co.*, 27 R.I. 320, 337, 62 A. 118, 125 (1905) (quoting with approval an ancient Latin maxim "Interest republicae ut sit finis litium" which translates as follows: "It is in the interest of the republic that there be an end to litigation.").

### Conclusion

For the reasons set forth in this opinion, we deny the appeal and affirm the judgment of the Superior Court. The papers in this case may be remanded to the Superior Court.

Justice FLAHERTY did not participate.

---

17. In their amended complaint in the instant case, the Palazzos alleged that Senator Alves "instituted the complaint * * * against Alan and William Palazzo for the primary purpose of putting pressure upon them to refrain from exercising their rights to petition and to free speech." We observe that such an allegation falls under the rubric of malicious prosecution and not abuse of process. The amended complaint further states that Senator Alves' use of "said proceedings for an ulterior purpose or wrongful purpose that the proceedings were not designed to accomplish constitutes an abuse of process." This conclusory and non-specific allegation, however, does not even come close to alleging facts which would satisfy the criteria for an abuse of process claim. *See Butera v. Boucher*, 798 A.2d 340, 353 (R.I.2002).