**Frank FIORENZANO**

v.

**Kenneth LIMA.**

**No. 2008–234–Appeal.**

Supreme Court of Rhode Island.

Nov. 6, 2009.

Frank Fiorenzano, Plaintiff Pro Se.

Joseph Palumbo, Esq., Middletown, for Defendant.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, ROBINSON, JJ., and WILLIAMS, C.J. (ret.).

## O P I N I O N

Justice ROBINSON for the Court.

The plaintiff, Frank Fiorenzano, appeals *pro se* from the Superior Court's grant of summary judgment in favor of the defendant, Kenneth Lima, with respect to each of the counts set forth in the plaintiff's complaint. This case came before the Supreme Court for oral argument pursuant to an order directing the parties to show cause why the issues raised in this appeal should not be summarily decided. After considering the written and oral submissions of the parties, we are of the opinion that the appeal may be resolved without further briefing or argument. For the reasons hereinafter set forth, we affirm the judgment of the Superior Court.

### Facts and Travel

This case arose in the wake of an acrimonious probate-related dispute involving Kenneth Lima and Charlene Lima, the latter being plaintiff's wife and Kenneth's sister.[1] In his complaint, Mr. Fiorenzano alleged that Kenneth had engaged in a pattern of harassing and abusive legal proceedings in a purported effort to inflict emotional and physical distress upon both Charlene and himself.[2] Mr. Fiorenzano further alleged that Kenneth's actions were motivated by his belief that he did not receive a proper share of his mother's estate under her will.[3] Mr. Fiorenzano asserted, *inter alia,* that Kenneth had filed frivolous motions in the probate court and had filed a complaint with the Rhode Island State Police, alleging that Charlene had embezzled assets of the estate.

The probate court litigation was ultimately settled; and, on September 29, 2006, Kenneth and Charlene signed mutual releases.[4] After the settlement of the probate court litigation, Kenneth commenced a civil action against an entity called Domestic Bank, alleging that it had mishandled the assets of his mother's estate. In the case at bar, Mr. Fiorenzano has alleged that Kenneth's harassment of him and his wife continued when defendant sought to depose each of them in connection with the Domestic Bank case.

Kenneth (the plaintiff in the Domestic Bank case and the defendant in the instant case) first attempted to depose Charlene in connection with the Domestic Bank litiga-

---

1. For the sake of simplicity and clarity, we shall frequently refer to the members of the Lima family mentioned herein by their first names; we of course intend no disrespect.

2. In his submissions to the Superior Court and to this Court, plaintiff has made frequent reference to Kenneth's alleged harassment of Charlene. It should be emphasized, however, that Charlene is not now and never has been a party to this case. In view of Charlene's non-party status, Kenneth's actions vis-á-vis Charlene (and we express no view concerning the accuracy of plaintiff's allegations in that regard) are of no moment in this case.

We consider plaintiff's frequent attempts to muddy the waters with irrelevant assertions concerning a non-party to be regrettable.

3. Angela Lima, the mother of Charlene and Kenneth Lima, died on June 3, 2004.

4. Although it is true that mutual releases were signed by Charlene and Kenneth at the time of the settlement of the probate litigation, we need not reach the issue of the preclusive effect (*vel non*) of those releases as to post-settlement civil actions since there is no evidence of any civil action ever having been brought by Charlene against Kenneth.

tion on February 14, 2008.[5] When she appeared for the deposition, Charlene was accompanied by her attorney and by Mr. Fiorenzano. Counsel for Kenneth objected to the presence of Mr. Fiorenzano at the deposition, citing Rule 30(c) of the Superior Court Rules of Civil Procedure; that rule provides that all counsel of record must be given forty-eight hours notice if a non-party seeks to attend the deposition. In response to that objection, Charlene's counsel stated on the record that he had relied on Mr. Fiorenzano's assistance and that Mr. Fiorenzano's presence was necessary to assist counsel in his representation of Charlene. Charlene's counsel later stated that Mr. Fiorenzano was also needed "to provide comfort" to Charlene during the deposition. Kenneth's counsel refused to go forward with the deposition at that time due to the presence of Mr. Fiorenzano. The dispute about who could attend the deposition was subsequently brought before a hearing justice of the Superior Court, who issued a protective order precluding Mr. Fiorenzano from attending his wife's deposition; and Charlene was eventually deposed.

Subsequent to the above-referenced first attempt to depose Charlene (but before her deposition was actually taken), defendant, through counsel, sought to take the deposition of Mr. Fiorenzano. A subpoena requiring Mr. Fiorenzano to appear at the office of Kenneth's counsel for the taking of his deposition on March 13, 2008 was issued. Because of Mr. Fiorenzano's unavailability on March 13, 2008, his deposition was not taken on that date. Mr. Fiorenzano alleges that he has tried on numerous occasions to reschedule his deposition, but that defendant has "failed and refused" to do so. The plaintiff now contends that defendant's refusal to reschedule the deposition "demonstrat[es] that the real reason for serving process on Plaintiff is to harass and annoy him," rather than to actually obtain plaintiff's testimony.

Mr. Fiorenzano commenced the instant action in the Superior Court for Newport County on April 11, 2008. The plaintiff's complaint contained two substantive counts. The first count of the complaint alleged that Kenneth engaged in abuse of process by seeking to depose him and Charlene in the above-referenced action against Domestic Bank. Mr. Fiorenzano alleged that defendant noticed those depositions only for the purpose of further harassing him and his wife just as (according to Mr. Fiorenzano) defendant also did during the probate proceedings. The second substantive count was a loss of consortium claim that (according to Mr. Fiorenzano) stemmed from defendant's wrongful conduct toward both him and Charlene. The complaint also sets forth extensive allegations, many of which are unrelated to the present case, which describe numerous acrimonious interactions over the course of several years.

The defendant filed a motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Superior Court Rules of Civil Procedure; he simultaneously moved in the alternative for summary judgment pursuant to Rule 56 of the Superior Court Rules of Civil Procedure. The defendant's two-pronged motion was heard before a hearing justice of the Superior Court on June 2, 2008. After considering the submissions and arguments of the parties, defendant's dispositive motion was granted;[6] the hear-

---

5. Charlene had earlier filed a motion to quash the notice of the deposition, but that motion was denied.

6. Since the hearing justice considered documents outside the pleadings, it is clear that she ruled in defendant's favor in reliance on

ing justice ordered that judgment be entered in favor of defendant on all counts of plaintiff's complaint. In the course of rendering her decision, the hearing justice stated:

> "The Court finds the instant Complaint to be scurrilous, bizarre[;] it is baseless, and it has components that are absolutely libelous and defamatory, per se, in that they purport to impute crimes baselessly to a person. This Complaint has no place in any court of integrity in the American judicial system, and the Court is dismissing it."[7]

Judgment was entered in favor of defendant in accordance with the above-referenced order. The plaintiff filed a timely notice of appeal on June 23, 2008. On appeal, plaintiff alleges that the hearing justice erred in dismissing his complaint.

### Standard of Review

 Due to the fact that the hearing justice considered materials outside of the complaint, we shall apply the Rule 56 summary judgment standard in evaluating the hearing justice's ruling. This Court reviews the granting of a motion for summary judgment in the same manner as did the motion justice, reviewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmoving party. *Chavers v. Fleet Bank (RI), N.A.,* 844 A.2d 666, 669 (R.I.2004); *see also Planned Environments Management Corp. v. Robert,* 966 A.2d 117, 121 (R.I. 2009); *Carrozza v. Voccola,* 962 A.2d 73, 76 (R.I.2009); *Cullen v. Lincoln Town Council,* 960 A.2d 246, 248 (R.I.2008); *Estate of Giuliano v. Giuliano,* 949 A.2d 386, 391 (R.I.2008). Summary judgment will be granted "if there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Lynch v. Spirit Rent-A-Car, Inc.,* 965 A.2d 417, 424 (R.I.2009). The party opposing a motion for summary judgment "carries the burden of proving by competent evidence the existence of a disputed material issue of fact and cannot rest on allegations or denials in the pleadings or on conclusions or legal opinions." *United Lending Corp. v. City of Providence,* 827 A.2d 626, 631 (R.I.2003) (internal quotation marks omitted); *see also Chavers,* 844 A.2d at 669–70.

### Analysis
### I

### The Abuse of Process Claim

 In spite of the inappropriately prolix nature of the complaint in this case, it is clear that plaintiff's allegation of abuse of

---

Rule 56 rather than Rule 12(b)(6) of the Superior Court Rules of Civil Procedure.

7. The plaintiff takes issue with the strong language used by the hearing justice in dismissing his complaint. Having reviewed the record in this case, we agree with the hearing justice's characterization of plaintiff's complaint; we are convinced that such comments were more than justified. *See generally Estate of Mitchell v. Gorman,* 970 A.2d 1, 2 n. 1 (R.I.2009); *see also Ehrenfeld v. Webber,* 499 F.Supp. 1283, 1295 (D.Me.1980) ("Although they make for good theatre, actions of this type pose a serious threat to the Court's struggle to keep its caseload current."); *State v. D'Amario,* 725 A.2d 276, 281 (R.I.1999) ("The

United States Supreme Court has indicated clearly that courts have limited resources and that relentless, frivolous filings constitute unreasonable demands on those resources.").

It is our considered judgment that plaintiff's claims in this case are lacking in legal merit and suggest spitefulness on the part of plaintiff. We have given serious consideration to the imposition of sanctions even in the absence of a motion for same. *See Palazzo v. Alves,* 944 A.2d 144, 155 (R.I.2008). Let it be noted, however, that should we encounter such conduct on the part of this plaintiff in the future, we would be disinclined to abstain from taking appropriate action with respect to such conduct.

process is based solely upon the fact that defendant attempted to depose him in the course of the Domestic Bank litigation.[8] Mr. Fiorenzano did not file a motion to quash the subpoena with which he was served in connection with that third-party deposition; instead, he has alleged in the instant complaint that he had no connection with that particular case and that the service of a subpoena upon him constituted "the latest in a series of abusive and harassing actions by Defendant toward Plaintiff and Plaintiff's wife."

In order to state a claim for abuse of process,[9] a plaintiff must show that "a legal proceeding, although set in motion in proper form, becomes perverted to accomplish an ulterior or a wrongful purpose for which it was not designed." *Hillside Associates v. Stravato*, 642 A.2d 664, 667 (R.I.1994); *see also Palazzo v. Alves*, 944 A.2d 144, 154 (R.I.2008); *Hoffman v. Davenport–Metcalf*, 851 A.2d 1083, 1090 (R.I.2004); *Toste Farm Corp. v. Hadbury, Inc.*, 798 A.2d 901, 907 (R.I.2002); *Butera v. Boucher*, 798 A.2d 340, 353 (R.I. 2002). To prevail on an abuse of process claim, a plaintiff must prove: "(1) that the defendant instituted proceedings or process against the plaintiff and (2) that the defendant used these proceedings for an ulterior or wrongful purpose that the proceedings were not designed to accomplish." *Palazzo*, 944 A.2d at 154 (internal quotation marks omitted); *see also Butera*, 798 A.2d at 353.

With respect to the requirement that plaintiff must establish the presence of an improper purpose (*see Palazzo*, 944 A.2d

at 154), this Court has quoted with approval the following passage from a respected treatise on the law of torts:

> "The improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club. There is, in other words, a form of extortion * * *." *Butera*, 798 A.2d at 353 (quoting W. Page Keeton, et al., *Prosser & Keeton on the Law of Torts* § 121 at 898 (5th ed. 1984)).

Significantly, the Court in *Butera* noted as follows: "*[E]ven a pure spite motive is not sufficient where process is used only to accomplish the result for which it was created.*" *Butera*, 798 A.2d at 354 (quoting with approval from *Prosser*, § 121 at 897) (emphasis added by the Court in *Butera*).

In the present case, plaintiff alleges that defendant noticed his deposition in order to harass and annoy him. Even if that allegation were true (and we express no opinion in that regard), it would not suffice to establish the existence of an abuse of process. The plaintiff has not pointed to any evidence tending to show that defendant sought to depose him in order to obtain any "collateral advantage." *See Butera*, 798 A.2d at 353. The subpoena was used for its intended purpose—*viz.*, to require plaintiff's presence at a deposition in the Domestic Bank case after Charlene's attorney had stated on the record that he had relied on Mr. Fiorenzano's assistance.[10] The hearing justice did not

---

8. We repeat that we are prescinding entirely from plaintiff's allegations relative to Kenneth's purported actions vis-á-vis Charlene. There is nothing in the record indicating that she has ever filed an abuse of process claim or any other tort claim against her brother.

9. It should be noted that abuse of process causes of action are disfavored. *Butera v. Boucher*, 798 A.2d 340, 354 (R.I.2002); *see also Brough v. Foley*, 572 A.2d 63, 66 (R.I. 1990).

10. The plaintiff asserts that what he characterizes as defendant's failure and refusal to

err in granting summary judgment in favor of defendant on plaintiff's abuse of process claim.

## II

### The Loss of Consortium Claim

■ The plaintiff next argues that the hearing justice erred in dismissing his loss of consortium claim. Citing G.L. 1956 § 9-1-41(a), plaintiff asserts that he is entitled to be awarded damages as a consequence of Kenneth's alleged tortious actions vis-á-vis Charlene. The hearing justice quite correctly pointed out that a loss of consortium action is derivative in nature and that Charlene is not a party to the instant litigation.

■ The hearing justice properly dismissed plaintiff's loss of consortium action against defendant. In *Sama v. Cardi Corp.*, 569 A.2d 432 (R.I.1990), we stated that "an action for loss of consortium under § 9-1-41, although a separate cause of action * * *, is not an independent action but **a derivative one** that is attached to the claim of the injured spouse. It arises from the injured spouse's physical injury and is dependent upon the success of the underlying tort claim." *Id.* (emphasis added); *see also Olshansky v. Rehrig International*, 872 A.2d 282, 291 (R.I.2005); *Desjarlais v. USAA Insurance Co.*, 824 A.2d 1272, 1277 (R.I.2003); *Soares v. Ann & Hope of Rhode Island, Inc.*, 637 A.2d 339, 353 (R.I.1994). A claim for loss of consortium by a spouse or parent or child depends on the injured party's ability to recover in a claim against the same defendant; the claim remains essentially inchoate until the injured party in fact recovers. *See Desjarlais*, 824 A.2d at 1277; *see also Santana v. Rainbow Cleaners, Inc.*, 969 A.2d 653, 667 (R.I.2009) (holding that, because the plaintiff mother did not prevail on her tort claim, her children's loss of consortium claim must fail); *Holley v. Argonaut Holdings, Inc.*, 968 A.2d 271, 276 (R.I.2009) (rejecting a wife's loss of consortium claim due to the fact that her husband's underlying tort claim failed); *Sama*, 569 A.2d at 433.

There is no indication in the record before us that Charlene ever pursued any civil action against Kenneth in connection with his alleged harassment of her. There being no evidence whatsoever of the existence of a successful tort action by Charlene against Kenneth, Mr. Fiorenzano's claim for loss of consortium is bootless: there is nothing upon which such a derivative claim can be based. *See Olshansky*, 872 A.2d at 291; *Soares*, 637 A.2d at 353.

There conceivably may be extraordinary circumstances in which a spouse can obtain damages for loss of consortium where his or her spouse cannot or will not bring an action. *See generally* Restatement (Second) of *Torts* § 693 cmt. *g* (1977). However, even if this jurisdiction were to look favorably upon the above-cited comment in the Restatement as to the possibility of a freestanding claim for loss of consortium, the circumstances of the instant case are entirely inappropriate for such an innovation; what is before us is the complete

reschedule the deposition after being advised that plaintiff was unavailable on the originally scheduled date demonstrates that defendant's true purpose in serving him with a subpoena was not to obtain his testimony, but rather to harass and annoy him. We note that plaintiff appended to his complaint copies of correspondence between him and defendant's counsel. A review of that correspondence does not reveal an improper purpose on the part of defendant in seeking to depose Mr. Fiorenzano. Indeed, it appears from that correspondence that defendant's attorney attempted to reschedule the deposition, but was unable to do so. There is no indication in the record that defendant's counsel had any improper purpose in seeking to depose Mr. Fiorenzano after Charlene's deposition was taken.

absence of any tort claim by the allegedly injured spouse as well as the complete absence of any "equitable" factor that might conceivably incline this Court to depart from the traditional principles relative to the *derivative* nature of loss of consortium claims. The hearing justice did not err in granting summary judgment in favor of the defendant on the plaintiff's loss of consortium claim.

## Conclusion

For the reasons stated in this opinion, we affirm the judgment of the Superior Court. The record may be remanded to that tribunal.