DECISION
Before this Court is a Super. R. Civ. P. 12(b)(6) motion to dismiss the counterclaims of Stonebridge Equipment Leasing, LLC ("Stonebridge"), Muhammad M. Itani ("Itani"), and Bisher I. Hashem ("Hashem") (collectively "Defendants or Counterclaimants") brought by Siemens Financial Services, Inc. ("Siemens Financial") and Siemens Medical Solutions USA, Inc. ("SMS") (collectively, "Plaintiffs"). Plaintiffs filed for replevin against Stonebridge and New England Radiology and seek damages for breach of contract against all Defendants with respect to agreements for the lease of medical diagnostic equipment. Defendants filed counterclaims alleging that that Plaintiffs fraudulently induced them into entering into lease agreements and personal guaranties.
 I Facts and Travel
In early 2006, Dr. Fathalla Mashali approached Defendants Itani and Hashem to determine if they would be interested in investing in a stand-alone, licensed, advanced medical diagnostic imaging facility to be located in Woonsocket, Rhode Island. In July 2006, Itani and *Page 2 
Hashem were provided with a business plan for the proposed facility that provided that the medical diagnostic imaging equipment would be leased from SMS or an affiliated company. Throughout the summer of 2006, Itani and Hashem had multiple meetings with Plaintiffs' representatives, and in particular with Richard Vasallo, to discuss the business plan and financial data for the proposed facility. At these meetings, Mr. Vasallo made representations as to the business plan for the proposed facility, the projected number of diagnostic tests to be performed at the proposed facility, and the demographical data generated by SMS for the geographical location of the proposed facility. Itani and Hashem formed Stonebridge with the purpose of leasing medical equipment from SMS for the proposed facility. Again, in October of 2006, SMS provided Stonebridge, Itani, and Hashem with demographical data and another business plan with financial data, including the estimated number of procedures to be performed, and the anticipated profitability of the proposed facility.
On March 29, 2007, Stonebridge and SMS entered into a Master Equipment Lease Agreement ("Master Agreement"), specifying the basic terms and conditions for the lease of items of property to be specified in leasing schedules entered into from time to time. (Pl. Ex. A.) On that same day, Stonebridge and SMS entered into six leasing schedules for the lease of medical diagnostic imaging equipment, specifically MRI, CT, and radiography machines ("Leased Equipment") (Pl. Ex. B-G). (The Master Agreement and the leasing schedules are collectively referred to herein as the ("Leases").) Concurrently, with Stonebridge's execution of the Leases, Defendants Itani and Hashem entered into personal guaranty agreements for the repayment of the obligations created by the Leases. (Pl. Ex. H-I.)
On February 9, 2007, Stonebridge and New England Radiology entered into an agreement whereby New England Radiology would sublease the Leased Equipment from *Page 3 
Stonebridge. (Pl. Ex J.) SMS consented to the sublease provided that timely payments were made and ownership of the Leased Equipment remained with SMS. (Pl. Ex. K.) SMS assigned to Siemens Financial all of its rights and remedies under the leasing schedules, as well as the personal guaranties, but retained its rights and remedies under the Master Agreement.
In letters dated December 16, 2008, Plaintiffs notified each Defendant that they were in default of their obligations under their respective agreements and demanded payment and return of all the Leased Equipment. (Pl. Ex. N-T.) Plaintiffs proceeded to file the instant action for replevin and breach of contract damages.[1]
 II Standard of Review
It is well-settled in Rhode Island that the role of a Rule 12(b)(6) motion is merely to test the sufficiency of the complaint. See Toste Farm Corp. v. Hadbury, Inc.,798 A.2d 901, 905 (R.I. 2002) (quoting R.I. EmploymentSec. Alliance, Local 401, S.E.I.U., AFL-CIO v. State Dep't ofEmployment and Training, 788 A.2d 465, 467 (R.I. 2002)); seealso Pellegrino v. R.I. Ethics Comm'n,788 A.2d 1119, 1123 (R.I. 2002)) (stating that "[t]he standard for granting a motion to dismiss is a difficult one for the movant to meet"). The complaint must give fair and adequate notice of the plaintiff's claim, but in most cases, it need not contain a high degree of factual specificity. See, e.g., Hyatt v.Village House Convalescent Home, Inc.,880 A.2d 821, 824 (R.I. 2005) (per curiam). In the instant matter, the Plaintiffs have filed a 12(b)(6) motion to dismiss the counterclaims asserted by the Defendants. Accordingly, the Court must ascertain whether, if the allegations in the counterclaims are true, the Defendants would be entitled to the requested relief, resolving any factual doubts in favor of the Defendants at this stage. Bruno v. Criterion Holdings, Inc.,736 A.2d 99 (R.I. 1999). Therefore, for the Plaintiffs to prevail on their *Page 4 
motion, it must be clear "beyond a reasonable doubt" that the Defendants would not be entitled to relief under any set of facts which might be proved in support of their claim as articulated in the counterclaims. See id. (quoting Bragg v. WarwickShoppers World, Inc., 102 R.I. 8, 227 A.2d 582, 584 (R.I. 1967).
Here, however, Plaintiffs ask this Court to follow the United States Supreme Court's ruling in Bell Atl. Corp. v.Twombly, which required the plaintiff to meet a heightened pleading standard to survive a motion to dismiss for failure to state a claim upon which relief can be granted. 550 U.S 544, 555 (2007). In Twombly, the Court emphasized that Rule 8(a)(2) still requires a "showing," rather than a blanket assertion, of entitlement to relief. 550 U.S. at 556. Plaintiffs argue for a standard of review which requires a plaintiff to present grounds for his entitlement to relief that are "more than labels, conclusions, and a formulaic recitation of the elements of a cause of action." Id. The Twombly Court reasoned that if a complaint is lacking some factual allegation, it is hard to see how a claimant could satisfy the requirement of providing not only "fair notice" of the nature of the claim, but also "grounds" on which the claim rests. Id.; see
5 Wright Miller § 1202, at 94, 95. Defendants counter that the standard of review for a 12(b)(6) motion in Rhode Island "is merely to test the sufficiency of the [counterclaim]." R.I.Employment Sec. Alliance, Local 401, S.E. I.U., AFL-CIO v. StateDep't of Employment and Training, 788 A.2d 465, 467 (R.I. 2002).
With respect to the standard for reviewing a motion to dismiss, the United States Supreme Court elaborated in Ashcroft v.Iqbal, 129 S. Ct. 1937, 1950 (2009), on the pleading standard it articulated in Twombly, utilizing a two-pronged approach for analyzing a motion to dismiss. First, noted the AshcroftCourt, a court is "not bound to accept as true a legal conclusion couched as a factual allegation," but "when there are well-pleaded factual allegations, *Page 5 
a court should assume their veracity." Ashcroft,129 S. Ct. at 1950. And second, "only a complaint that states a plausible claim for relief survives a motion to dismiss."Id. at 1950 (citing Twombly, 550 U.S. at 556).
In Rhode Island the function of a Rule 12(b)(6) motion is to test the sufficiency of the complaint. Barrette v. Yakavonis,966 A.2d 1231, 1234 (R.I. 2009) (quoting Palazzo v. Alves,944 A.2d 144, 149 (R.I. 2008)). In reviewing a motion to dismiss, this Court examines the allegations contained in the complaint, assumes them to be true, and views them in the light most favorable to the nonmoving party. Palazzo, 944 A.2d at 149 (quotingEllis v. Rhode Island Public Transit Authority,586 A.2d 1055, 1057 (R.I. 1991)). To date, the Rhode Island Supreme Court has not addressed the decision in Twombly and even afterTwombly has continued to cite to the standards inConley v. Gibson, 355 U.S. 41 (1957); see Barrette,966 A.2d at 1234 (R.I. 2009). However, our Supreme Court's overall approach in analyzing a 12(b)(6) motion does not conflict with the holding in Ashcroft that a complaint that includes well-pleaded factual allegations and a plausible claim of relief should survive a motion to dismiss. Ashcroft,129 S. Ct. at 1950. Consistent with this Court's previous holding concerning the Twombly standard, the claims in this matter do not rise to the level of complexity contemplated by theTwombly Court that would require a heightened level of pleading beyond that which is generally required to survive a motion to dismiss. D.B. Zwirn Special Opportunities, Ltd. v. EasternDisplay Acquistion, Inc., No. 07-1093, 2008 WL 2598133, (R.I. Super. 2008). Further, the claims are not based on mere speculation as the counterclaims point to specific facts to support the Defendants' claims. Id.
Therefore, this Court will determine this motion to dismiss based on the standards long accepted and applied in our jurisdiction and not require a heightened level of pleading. For purposes of this motion, it will accept the facts stated in the counterclaims as true. *Page 6 
 III Discussion
In the instant matter, Plaintiffs filed for replevin against Stonebridge and New England Radiology and for breach of contract damages against all Defendants. In their counterclaims, Defendants argue that Plaintiffs fraudulently induced them into entering into the Leases and personal guaranties. In their motion to dismiss, Plaintiffs argue, first, that the integration clauses and waivers contained in the parties' agreements bar Defendants' counterclaims and second, that even if the integration clauses and waivers did not bar the counterclaims, Defendants have not pled the existence of any misrepresentation of fact or violation of Mass. Gen. Laws. ch. 93A § 2 (2006)[2] ("Chapter 93A").
 A Choice of Law
A threshold issue before this Court is whether the choice of law clause in the Master Agreement, specifying the applicable law governing the agreement as that of New Jersey, should be applicable to the Defendants' counterclaims. Plaintiffs argue that consistent with the choice of law provision in the Master Agreement, New Jersey law should apply to the breach of contract action as well as to the Defendants' counterclaims. Defendants object, reasoning that although Plaintiffs' breach of contract claims are likely governed by New Jersey law, the counterclaims are governed by Massachusetts law because fraud claims are not subject to choice of law provisions.
In Rhode Island, "[a]s a general rule, parties are permitted to agree that the law of a particular jurisdiction will govern their transaction." Terrace Group v. Vermont Castings, Inc.,753 A.2d 350, 354 (R.I. 2000) (quoting Sheer Asset ManagementPartners v. Lauro Thin Films, *Page 7 731 A.2d 708, 710 (R.I. 1999)). Additionally, the Restatement (Second) Conflict of Laws § 201 states that even where there are claims of misrepresentation, duress, undue influence and mistake concerning the entering of a contract, a choice of law provision in that contract will only be denied effect if "the misrepresentation, undue influence, or mistake was responsible for the complainant's adherence to the provision." Cf. D'Antuono v. CCH ComputaxSystems, Inc., 570 F. Supp. 708, 715 (R.I. 1983) (Although computer system purchaser alleged that contracts were induced by fraudulent misrepresentation and therefore voidable, that did not compel a finding that the choice of forum language was voidable where purchaser did not contend that the forum designation clause itself was procured by fraud). In the instant matter, the parties' Master Agreement states, in bold, that it "shall be deemed entered into in, the State of New Jersey, and . . . shall be governed and construed in accordance with the laws of the State of New Jersey without giving effect to the principles of conflict of laws thereof." (Pl. Ex. A.)
However, since the allegations here concern fraud, a tort conflicts of law analysis is appropriate. In Northeast DataSystems, Inc. v. McDonnell Douglas Computer Systems Company, the federal court held that while a choice of law clause may select some other state's law to govern "contract related" claims, fraud claims — particularly those concerning the validity of the formation of a contract — are not subject to any such choice of law provisions. 986 F.2d 607, 611 (1st Cir. 1993) (citing Computer Sys. Eng'g, Inc. v. Qantel Corp.,571 F. Supp. 1365, 1372 (D. .Mass. 1983), aff'd, 740 F.2d 59 (1st Cir. 1984)); see also Crellin Technologies, Inc. v. EquipmentLease Corp., 18 F.3d 1 (D.R.I. 1994) (holding that when a chapter 93A claim and the requested remedy are highly analogous to a tort claim and remedy, the chapter 93A claim should be considered as a tort for choice-of-law purposes). *Page 8 
In determining which law governs in a tort action involving two or more jurisdictions, Rhode Island applies the "interest-weighing approach." Berardi, U.S.A., Ltd. v. Employers Mut. Cas. Co.,526 A.2d 515, 516 (R.I. 1987) (citing Brown v. Church of the HolyName of Jesus, 105 R.I. 322, 326-27, 252 A.2d 176, 179 (1969)). Under this approach, the court must look at the particular case facts to determine the rights and liabilities of the parties "in accordance with the law of the state that bears the most significant relationship to the event and the parties."Cribb v. Augustyn, 696 A.2d 285, 288 (R.I. 1997) (per curiam) (quoting Pardey v. Boulevard Billiard Club,518 A.2d 1349, 1351 (R.I. 1986)); see also Putnam Resources v.Pateman, 958 F.2d 448, 464 (1st Cir. 1992). Factors which must be weighed in determining which law applies are "(1) predictability of result; (2) maintenance of interstate and international order; (3) simplification of the judicial task; (4) advancement of the forum's governmental interests; and (5) application of the better rule of law." Pardey, 518 A.2d at 1351 (citingBrown v. Church of the Holy Name of Jesus,105 R.I. 322, 252 A.2d 176 (1969)). In tort cases, the contacts to be considered are "`(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered.'" Najarian v. NationalAmusements, Inc., 768 A.2d 1253, 1255 (R.I. 2001) (quotingBrown, 105 R.I. at 326-27, 252 A.2d at 179).
Applying these factors to the case at bar, this Court finds it appropriate to apply the substantive law of Massachusetts. The place where the injury and the conduct allegedly causing the injury occurred was Massachusetts. The Defendants claim that most of the meetings that took place among Itani, Hashem, and the Plaintiffs' agents, who allegedly made misrepresentations, took place in South Easton, Massachusetts. Additionally, the Leases and the *Page 9 
guaranties, which were allegedly procured through fraud, were executed by Stonebridge, Itani, and Hashem in Massachusetts. While the Plaintiffs are Delaware corporations, registered to transact business in Rhode Island, their agent who primarily interacted with Itani and Hashem concerning the proposed facility, has an office in Burlington, Massachusetts. Furthermore, Defendants Itani and Hashem, who are domiciled in Massachusetts, are also the owners and members of Stonebridge Equipment Leasing, which is a Massachusetts limited liability company with a place of business in Woonsocket, Rhode Island. Although the Leased Equipment is located in Rhode Island, it is clear the parties' relationship, particularly concerning negotiations for the agreements, was centered in Massachusetts. The only connection to New Jersey is the boilerplate Leases executed by the parties. Therefore, the factors of predictability of results and maintenance of interstate order weigh in favor of Massachusetts.Pardey, 518 A.2d at 1351. While Plaintiffs' breach of contract claims may be governed by the law of New Jersey, Massachusetts has the most significant relationship to Defendants' counterclaims alleging misrepresentations, fraud, and deceit, and therefore, Massachusetts law should apply here.
Since the law of Massachusetts should apply to Defendants' tort claims, this Court must now look to the allegations of Defendants' claims for violations of Chapter 93A to determine if they allege breach of contract or fraud. Chapter 93A is a Massachusetts law, and unless the law of Massachusetts governs, the claims should be dismissed. ePresence, Inc. v. Evolve Software, Inc.,190 F. Supp. 2d 159, 165 (D.Mass. 2002). Plaintiffs argue that the New Jersey choice of law provision in the agreements should govern the Chapter 93A claims and therefore, they should be dismissed. Defendants maintain that the Chapter 93A claims should not be dismissed based on the choice of law provision because they concern fraud and not breach of contract. *Page 10 
The classification of a Chapter 93A claim as either a contract or tort action determines the scope and effect of a choice of law provision in a contract. Kitner v. CTW Transport,Inc., 762 N.E.2d 867, 872 (Mass. .App. Ct. 2002). When a Chapter 93A claim may essentially be reduced to a breach of contract claim, the choice of law provision in a contract, such as the one here calling for the law of New Jersey, should govern the dispute.Northeast Data Systems, Inc., 986 F.2d at 610. However, "when a Chapter 93A claim and the requested remedy are highly analogous to a tort claim and remedy, the chapter 93A claim should be considered as a tort for choice-of-law purposes." Crellin Technologies,Inc., 18 F.3d at 11 (citing Computer Sys. Eng'g, Inc.,571 F. Supp. at 1371).
Plaintiffs rely on Barkan v. Dunkin Donuts, Inc., to support their position that Defendants' claims are essentially for breach of contract and thus the New Jersey choice of law provision should govern. 520 F. Supp. 2d 333, 340 (D.R.I. 2007). In Barkan, the plaintiff's allegations that defendants entered into the settlement agreement even though they had no intention of helping plaintiffs obtain refinancing, did not take the Massachusetts unfair and deceptive practices claims outside the scope of the provision in the settlement agreement which chose Rhode Island law to govern disputes regarding the agreement. Id. at 340. However, unlike in the instant matter, in Barkan, there were no allegations concerning fraud in the formation of the contract, and the court acknowledged that the plaintiff's Chapter 93A claim could be "adequately addressed within the framework of Rhode Island contract law." Id. Fraud claims concerning the validity of the formation of the contract fall outside a contract's choice of law provision. Northeast Data Systems, Inc.,986 F.2d at 611 (citing Qantel, 571 F. Supp. at 1372). Here, since Defendants have alleged fraud in the formation of the Leases as well as the personal guaranties, their Chapter 93A claims fall outside the scope of the New Jersey choice of *Page 11 
law provision and should be analyzed as tort claims. Since this Court has already determined that the law of Massachusetts should apply to Defendants' tort claims, Defendants' claims for violations of Chapter 93A should not be dismissed based on the New Jersey choice of law provision in the parties' agreements.
 B Counterclaims
Defendants have filed counterclaims for intentional misrepresentation, negligent misrepresentation, fraud and deceit, and violations of Chapter 93A. All of the counterclaims are based on allegations of misrepresentations made by Plaintiffs' representatives to Itani and Hashem in forming the Leases and guaranties. Plaintiffs first assert that the integration clauses in the Leases, as well as the waiver of defenses clauses in the guaranties, bar all of the counterclaims. And further, Plaintiffs maintain Defendants' claims cannot succeed because they have failed to ask this Court to "vitiate" the agreements. Defendants counter that integration and waiver of defenses clauses are void where fraud in the inducement and deceit in the formation of the contracts are shown.
Plaintiffs' argument that the Defendants' claims of fraudulent inducement fail because Defendants have neglected to ask this Court to "vitiate" the agreements is unavailing. Although fraud vitiates every agreement at the election of the injured party, a plaintiff can also seek to recover in tort for the defendant's fraud in inducing him to agree to the terms of the written agreement.Bates v. Southgate,308 Mass. 170, 179-81, 31 N.E.2d 551, 556-58 (1941) (citingConnelly v. Fellsway Motor Mart,270 Mass. 386, 391 170 N.E. 467, 469 (Mass. 1930)). Thus, Defendants' counterclaims are not barred by their maintaining a separate tort action for fraud rather than an action for rescission. *Page 12 
Furthermore, it is well-settled in Massachusetts that "in cases of fraudulent inducement, relief is not barred by an integration clause, even where the parties are sophisticated and their bargaining powers are equal." Shawmut-Canton LLC v. Great SpringWaters of America, 816 N.E.2d 545, 549 (Mass.App.Ct. 2004) (citing Sound Techniques, Inc. v. Hoffman,737 N.E.2d 920, 925-27 (Mass.App.Ct. 2000)); see also VMarkSoftware, Inc. v. EMC Corp.,642 N.E.2d 587, 594 (Mass.App.Ct. 1994) (finding that in Massachusetts a party may not escape liability for misrepresentation by resorting to damage limitation or integration clauses). Plaintiffs' argument that the waiver of defenses clauses bar the counterclaims is also unavailing. In Bates, the court held that "contracts or clauses attempting to protect a party against the consequences of his own fraud are against public policy and void where fraud inducing the contract is shown." Bates,308 Mass. at 182, 31 N.E.2d at 558. Additionally, in Massachusetts, a contracting party cannot rely upon an integration clause or anexculpatory clause to protect him or her against claims based onfraud or deceit. Sound Techniques, Inc.,737 N.E.2d at 921 (emphasis added). Consequently, Defendants' counterclaims for intentional misrepresentation and fraud and deceit cannot be dismissed based on integration or waiver of defenses clauses in the Leases or the personal guaranties.
However, as admitted in their memorandum opposing Plaintiffs' motions to dismiss, Defendants' claims for negligent misrepresentation are vulnerable to attack. (Defs. Memo. 6.) As previously discussed, as a general rule, integration and exculpatory clauses do not bar claims of fraudulent inducement. Bates,308 Mass. at 182, 31 N.E.2d at 551. However, the same rule is not applicable to claims of negligent misrepresentation, which concern cases where negligently, rather than intentionally made statements are shown to be false. Sound Techniques, Inc.,737 N.E.2d at 926. After all, it is only "intentional misconduct that justifies judicial intrusion upon *Page 13 
contractual relationships in order to prevent the wrongdoer from securing contractual benefits for which he had not bargained."Id. (citing Bates, 308 Mass. at 182, 31 N.E.2d at 558). Therefore, this Court finds that, under the law of Massachusetts, Defendants' claims for negligent misrepresentation must be dismissed.
Another issue presented to this Court is whether the alleged misrepresentations made to Defendants concern fact or mere opinion. Defendants allege that Plaintiffs, through their agents, made representations of fact which were reasonably relied upon when executing the agreements. Plaintiffs claim that Defendants have not pled the misrepresentation of any fact but rather only estimates and opinions. In order to establish claims of fraudulent misrepresentation, a plaintiff must show that the defendant made a false representation of a material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon, and that the plaintiff reasonably relied upon the representation as true and acted upon it to his damage. Russell v. Cooley DickinsonHosp., Inc., 772 N.E.2d 1054, 1066 (Mass. 2002) (citingDanca v. Taunton Sav. Bank, 429 N.E.2d 1129, 1133 (1982)).
Additionally, a statement on which liability for misrepresentation may be based must be one of fact, not of opinions, conditions to exist in the future, or matters promissory in nature.Stolzoff v. Waste Systems Intern., Inc.,792 N.E.2d 1031, 1041 (Mass.App. 2003); see also Zimmerman v.Kent, 575 N.E.2d 70, 79 (Mass.App.Ct. 1991). Under Massachusetts law, in order to constitute a "fact," the statement's content must be "susceptible of knowledge" at the time it is made.Zimmerman, 575 N.E.2d at 79. Here, the Defendants allege that Plaintiffs, through their agents, made misrepresentations as to the "projected number of diagnostic tests to be performed at the proposed facility, the anticipated profitability of the proposed facility, and the demographical data generated by SMS for the geographical location of the proposed facility." *Page 14 
(Stonebridge Countercl. ¶ 12; Itani and Hashem Countercl. ¶ 13.) Demographic data refers to the information and statistics created from the study of human populations and their characteristics, which are often used in government, marketing, or opinion research. Joseph A. McFalls Jr., Population: A LivelyIntroduction, 5th Edition, 62 Population Bulletin, A Publication of the Population Reference Bureau 3 (2007). Consequently, statements relating to the demographics of a particular geographic region — such as the location for the proposed medical facility — contain information and statistics resulting from studies and surveys of the population of that area, which are facts susceptible to knowledge. See generally Control DataCorp. v. Garrison, 233 N.W.2d (1975) (finding that the representation made by the defendant that the building was structurally sound which was subject to testing and scientific analysis was therefore susceptible of knowledge). Further, the data concerning the characteristics of the population for the location of the proposed facility, especially when used to identify consumer markets, consisted of material information which Defendants claim they relied upon when making their decision to open the proposed facility. Therefore, assuming the facts in the counterclaims to be true and viewing them in a light most favorable to the Defendants, the alleged misrepresentations made to the Defendants, at least concerning the demographic data, could concern issues of fact rather than opinion. For that reason, this Court denies Plaintiffs' motion to dismiss the Defendants' counterclaims for intentional misrepresentation and fraud and deceit.
Defendants have also filed counterclaims for violations of Chapter 93A § 2, which prohibits unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. Mass. Gen. Laws ch. 93A, § 2 (2006). A party bringing an action under Chapter 93A must not only establish that the defendant committed unfair or deceptive *Page 15 
trade practices but also that the defendant's unfair or deceptive method, act, or practice caused him some injury. Herman v. AdmitOne Ticket Agency LLC, 912 N.E.2d 450 (Mass. 2009). A business practice is "unfair" and therefore unlawful, if it is immoral, unethical, oppressive, or unscrupulous or falls within bounds of some statutory, common law, or other established concept of unfairness. Ellis v. Safety Ins. Co.,672 N.E.2d 979, 986 (Mass.App.Ct. 1996). Further, a practice is "deceptive" if it "could reasonably be found to have caused a person to act differently from the way he [or she] otherwise would have acted." Aspinall v. Philip Morris Companies, Inc.,813 N.E.2d 476 (Mass. 2004) (quoting Purity Supreme,Inc. v. Attorney Gen., 407 N.E.2d 297 (Mass. 1980)). Accordingly, misrepresentations which are made to induce the execution of a contract are "unfair and deceptive" acts under consumer protection statute. Riley v. Commercial Ins. Agency, Inc.,1999 Mass. App. Div. 243 (1999); Mass. Gen. Laws ch. 93A (2006). Here, accepting the facts in the counterclaims as true, the Defendants have established causes of action for the common law torts of both misrepresentation and fraud and deceit, the conduct of which clearly falls within the definition of "unfairness." Therefore, this Court denies Plaintiffs' motion to dismiss Defendants' counterclaims for violations of Chapter 93A.
 IV Conclusion
After due consideration of the arguments advanced by counsel at oral argument and in their memoranda, the Court finds that since the Defendants' allegations concern fraudulent actions and injury which primarily occurred in Massachusetts, the substantive law of Massachusetts should apply to the Defendants' counterclaims. Additionally, since Defendants have alleged fraud in the inducement of the Leases and personal guaranties, the integration and waiver of defenses clauses in those agreements do not bar their counterclaims for intentional *Page 16 
misrepresentation, fraud and deceit, and violations of Chapter 93A. Therefore, accepting the allegations in Defendants' counterclaims as true and viewing those allegations in the light most favorable to them, the Court hereby denies the Plaintiffs' motion to dismiss Counts I, III, and IV, finding that based on the allegations in the counterclaims, the Defendants have stated a claim for which they will be permitted to prove facts entitling them to relief. However, given that the integration and waiver of defenses clauses do bar Defendants' counterclaims for negligent misrepresentation, the Court grants Plaintiffs' motion to dismiss Count II.
Prevailing counsel may present an order consistent herewith which shall be settled after due notice to counsel of record.
[1] Motion for replevin was granted on June 11, 2009.
[2] Chapter 93A § 2 expressly provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."