DECISION
Before this Court are two Motions to Dismiss and a Motion for Summary Judgment filed by Jennifer Poisson ("Defendant"). Keven McKenna, P.C. ("Plaintiff") objects to all Defendant's motions. For the reasons discussed herein, this Court grants Defendant's Motion to Dismiss as applied to Count IV, but denies Defendant's Motions to Dismiss and Motion for Summary Judgment as applied to Counts I, II, III.
 I Facts and Travel
Jennifer Poisson submits Motions to Dismiss and a Motion for Summary Judgment against the four counts within the 09-4826 Complaint filed by Keven A. McKenna, P.C. .[1]
Super. R. Civ. P. 12(b)(6); 56(c). Defendant filed these Motions and her memorandum of law on March 29, 2010. Plaintiff submitted an objection to Defendant's Motions on April 5, 2010 and a memorandum of law in support of his objection on June 4, 2010. Originally, the Court scheduled June 8, 2010 as the hearing date for the Motions, but the matter was continued by agreement to June 23, 2010. Had the hearing proceeded on June 8, 2010 as intended, Plaintiff's memorandum would have been filed only four days prior to the hearing date and therefore, would have been untimely per the Administrative Order of July 26, 2006 In Re: Dispositive *Page 2 
Motions ("Administrative Order").[2] However, because the matter was continued until June 23, 2010, this Court found that Plaintiff's June 4, 2010 memorandum was filed more than fourteen days before the hearing and therefore was timely per the Administrative Order. Accordingly, this Court considered the content of Plaintiff's opposing memorandum.
The instant controversy emanates from a fee agreement among Defendant, Defendant's now-deceased husband, William Poisson ("Mr. Poisson"); Plaintiff's law firm, Keven A. McKenna P.C.; the Weetamoe Condominium Association ("Weetamoe Association"); and Leilani Allen. Defendant, Mr. Poisson, and Leilani Allen were/are all condominium unit owners (collectively "condominium parties") at the Weetamoe Condominium Complex in Bristol, Rhode Island. These condominium parties requested Plaintiff's legal services to effect a title clearing action for the Weetamoe Condominium Complex, where Leilani Allen, Mr. Poisson, and Defendant owned units. (Compl. ¶ 4.) Mr. Poisson and Defendant (after Mr. Poisson passed away) were/are presidents of the Weetamoe Association. Leilani Allen was the Weetamoe Association Conservation Commission Chair.[3] As such, Mr. Poisson and Leilani Allen entered into the fee agreement in both an individual capacity and representative capacity. Defendant entered into the agreement in an individual capacity only.
All parties signed this fee agreement on January 25, 2003 ("2003 Contract"). Id.; (Pl.'s Memo. Ex. 1.) For an hourly rate of $300, [4] plus actual costs, plus an amount equal to 40% of the *Page 3 
settlement if recovered, [5] Plaintiff agreed to continue[6]
providing legal services to the condominium parties who would be jointly and severally responsible for the stated fees, costs, and contingency. (Pl.'s Memo. Ex. 1.) However, the 2003 Contract also stipulated that Plaintiff would not seek payment for his attorneys' fees, costs, or the 40% settlement contingency from the condominium parties individually and only would redeem his fees out of the settlement res as long as his firm "was not discharged from representation prior to recovery." Id.
After the 2003 Contract was memorialized, Plaintiff did, in fact, clear the title by settling litigation (PB-02-2517) between the condominium parties, and Toll Brothers, Inc., the Town of Bristol, Terry and Mark Bear, and Seacoast Residential Development, LLC for $1.5 million. Id. ¶ 16. The order for settlement was entered on November 21, 2008. According to Plaintiff, however, negotiation for the settlement was virtually complete by November 2004, but Defendant raised frivolous issues to delay the completion of the negotiations for four years.Id. ¶¶ 29-39. Plaintiff also informs this Court that in or around November 2004, Defendant and Mr. *Page 4 
Poisson hired J. Richard Ratcliffe ("Mr. Ratcliffe") as putative co-counsel to challenge Plaintiff's rights to the 40% contingency and attorneys' fees pursuant to the 2003 Contract.Id. ¶ 39.
It was not until November 26, 2008 that the settlement was finalized and Plaintiff, along with Defendant's attorney, Mr. Ratcliffe, jointly deposited the $1.5 million settlement funds into a trust account for the condominium parties.Id. ¶ 39. Of the $1.5 million total res, Plaintiff states that Defendant and Mr. Poisson (now deceased) are entitled to receive a cleared title and $174,551.41 from the settlement — a sum that reflects their share of the settlement proceeds after Plaintiff's attorneys' fees and contingency are paid.Id. ¶ 17. Plaintiff recounts that prior to the 2008 settlement — throughout 2003, 2004, 2005 and 2008 — he sent several invoices to Defendant requesting payment for his legal services and which Defendant has refused to pay.Id. ¶¶ 5-6. Plaintiff alleges that as of November 26, 2008 Defendant owed him $968,004.77 in legal fees, costs, and the contingency payment for his services, not including interest. Id. ¶ 7. Plaintiff asserts that Defendant paid the attorneys' fees of Mr. Ratcliffe, but continues to refuse to pay him. Id. ¶ 40.
In addition to billing the $968,004.77 directly to Defendant, the instant Plaintiff also claimed a right to the $1.5 million settlement to cover the $968,004.77 worth of fees, costs, and the 40% contingency. Plaintiff admits that he has recovered approximately $350,000 from the settlement res already. (Pl.'s Opp'n memo at 3.) After the PB-02-2517 litigation was settled in November 2008, the condominium parties, specifically the Weetamoe Association and Leilani Allen, disputed how the $1.5 million settlement res would be divided. When no agreement could be reached, the Weetamoe Association filed an interpleader complaint, denoted as PC-08-7674, on December 5, 2008. Instant Plaintiff and Leilani Allen answered the 08-7674 complaint to assert their rights to the settlement res, and instant Plaintiff also counterclaimed against the *Page 5 
Weetamoe Association for breach of the 2003 Contract. Defendant is not a party to the 08-7674 interpleader and was not joined to the 08-7674 counterclaim. However, at issue in the 08-7674 case is whether the 2003 Contract — to which instant Defendant is a party — was conscionable and valid. This determination turns whether and to what extent instant Plaintiff has a claim to the res or a claim against Weetamoe Association for breach of contract in the 08-7674 case.
On January 23, 2009, the instant Plaintiff moved for summary judgment against the Weetamoe Association 08-7674 complaint, but was denied. In April 2009, Mr. Poisson passed away, and Defendant assumed her husband's role as Weetamoe Association President. Following denial of summary judgment for case 08-7674, the instant Plaintiff was deposed by Weetamoe Association on August 19, 2009 (during which the instant Defendant was present). The 08-7674 interpleader action and its related breach of contract counterclaim remain pending in this Court. According to the most recent docket entries, the trial for 08-7674 is scheduled to commence on August 26, 2010. The case was continued by agreement on July 19, 2010.
On August 21, 2009, two days after Plaintiff's deposition for the 08-7674 case, Plaintiff filed this instant 09-4826 Complaint against Defendant in her individual capacity. The 09-4826 Complaint sounds in breach of contract and quasi-contract principles. After several failed attempts in September 2009 to serve Defendant with the 09-4826 Complaint and summons at her Rhode Island residence, Plaintiff obtained permission from this Court to effect "tack on" alternative service on November 25, 2009. Plaintiff reached Defendant with process on March 12, 2010 — 203 days after the 09-4826 Complaint was filed, but only 107 days after "tack on" service was permitted.
The instant 09-4826 Complaint alleges four counts against Defendant in her individual capacity. Count I is for breach of contract. Plaintiff alleges that Defendant breached the *Page 6 
2003 Contract by refusing to pay $968,004.77 worth of "legal fees and costs and collection bonus as she promised in her signed contract with [Plaintiff]." (Compl. ¶¶ 10-12.)
Count II is a book account. Plaintiff states that Defendant agreed (by her signature) that she was directly responsible for the payment of invoice #4711 that Plaintiff remitted to her for his legal services in the amount of $119,640.08. Id. ¶¶ 13-15. By her signature and Defendant's signature on the 2003 contract, Plaintiff claims that Defendant agreed to pay all subsequent invoices worth a total of $968,004.77. Id. ¶¶ 13-22.
In Count III, Plaintiff requests the $968,004.77 from Defendant under a theory of quantum meruit. Id. ¶ 23-25. Plaintiff states that he expended 2051.17 hours and $23,321.92 of expenses for the legal services necessary to settle the title at the Weetamoe Complex, a direct benefit for Defendant. Plaintiff maintains that if Defendant received services worth $968,004.77 from Plaintiff without remitting payment, it would constitute unjust enrichment. As such, Plaintiff claims that Defendant owes Plaintiff this sum.
Count IV is a tortious interference with contract claim for which Plaintiff requests $4.5 million dollars from Defendant in treble damages. As stated above, in November 2004, Plaintiff allegedly had negotiated a settlement to clear the title on Defendant's and the other condominium parties' units. Id. ¶ 29. Basically Toll Brothers, Inc. would pay $1.5 million, which would be divided among the condominium parties, including Defendant, and then the parties would form a master condominium agreement between Weetamoe Association and the Bristol Landing Condominium.Id. ¶ 29. According to Plaintiff, around November 2004 when the PB-02-2517 litigation parties were ready to settle, Defendant and Mr. Poisson requested that Plaintiff reduce his contract fee,id. ¶ 30, in accordance with verbal promises Plaintiff allegedly had made. (Mr. Poisson Aff. 1 May 2, 2009.) When Plaintiff would not reduce his fee, Defendant hired another *Page 7 
lawyer, Mr. Ratcliffe, as putative co-counsel to Plaintiff to attempt to defeat Plaintiff's contractual rights to an "incentive payment to [Plaintiff] upon receipt of the settlement proceeds."Id. ¶¶ 32-34. Plaintiff alleges that Defendant's "four-year crusade" to defeat his contractual rights to the 40% settlement incentive constitutes tortious interference with contract. ¶¶ 34-35. Plaintiff alleges that Defendant further interfered with the 2003 Contract by refusing to complete the settlement negotiations with Toll Brothers, Inc. for frivolous reasons in order to delay ripening Defendant's right to the 40% incentive payment. Id. ¶ 38.
On March 29, 2010, Defendant filed a Motion to Dismiss the entire Complaint pursuant to Super. R. Civ. P. 12(b)(5) for insufficiency of process. She also filed a Motion to Dismiss against the tortious interference with a contract claim, Count IV, pursuant to Super. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted. Lastly, Defendant filed a Motion to Dismiss or in the alternative, Motion for Summary Judgment, against the breach of contract and quasi-contract claims, Counts I, II, III, pursuant to Rule 12(b)(6) and Super. R. Civ. P. 56. Plaintiff opposed Defendant's Motions in an objection filed on April 5, 2010 and in an accompanying memorandum filed on June 4, 2010. This Court heard oral argument from both parties on June 23, 2010.
 II Standard of Review A Motion To Dismiss for Insufficient Service of Process — Rule 12(b)(5)
Upon a proper motion by a party or sua sponte by this Court, Rule 12(b)(5) permits a trial justice to dismiss a civil matter for "insufficiency of service of process." Id. Our Supreme Court "reviews the dismissal of a complaint for failure to serve process within the appropriate time under an abuse of discretion standard." Gucfa v. King,865 A.2d 328, 331 (R.I. 2005) (quoting Ransom v. DaLomba,755 A.2d 840, 840 (R.I. 2000)). According to Super. R. Civ. P. 4(l), *Page 8 
sufficient service of process requires the plaintiff to provide the defendant with a copy of the complaint along with a summons within 120 days of the commencement of the action, which is usually the filing of the complaint. Id. However, if the plaintiff serves the defendant after 120 days has passed, but can show good cause for the failure to effect service within that Rule 4(l) time frame, a court, in its discretion, may still find that the service was appropriate. Id. ("If a service of the summons and complaint is not made upon a defendant within 120 days after the commencement of the action the court upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good causefor the failure, the court shall extend the time for servicefor an appropriate period.") (emphasis added). "`Good cause is likely (but not always) to be found when the plaintiff's failure to complete service in timely fashion is a result of a third person, typically the process server, [if] the defendant has evaded service of the process or engaged in misleading conduct, [if] the plaintiff has acted diligently in trying to effect service or [if] there are understandable mitigating circumstance[s]." Bunn v. Gleason,250 F.R.D. 86, 89 (D. Mass. 2008) (interpreting Federal Rule of Civil Procedure 4(m), which is analogous to our Rule 4(l) articulating sufficiency of process (quoting McIsaac v.Ford, 193 F. Supp. 2d 382, 383 (D. Mass. 2002))).
 B Motion To Dismiss for the Failure To State a ClaimUpon Which Relief May Be Granted — Rule 12(b)(6)
"The sole function of a motion to dismiss is to test the sufficiency of the complaint." Palazzo v. Alves,944 A.2d 144, 149 (R.I. 2008) (quoting R.I. Affiliate, ACLU, Inc.v. Bernasconi, 557 A.2d 1232, 1232 (R.I. 1989)). Though recent Supreme Court of the United States decisionsBell Atl. Corp. v. Twombly and Ashcroft v. Iqbal
arguably raise the bar for *Page 9 
sufficiency by requiring plaintiffs to allege a set of plausible, rather than possible, facts showing an entitlement to relief, our jurisdiction has not expressly adopted (or rejected) this new precedent. See Iqbal,129 S. Ct. 1937, 1950 (2009) (expanding the plausibility pleading standard to all civil cases and stating that "threadbare recitals of the elements of a cause of action" are not sufficient pleadings);Twombly, 550 U.S 544, 546, 556 (2007) (rejecting the "no set of facts" language for motions to dismiss and instead requiring that plaintiffs present grounds for an entitlement of relief that are "more than labels, conclusions, and a formulaic recitation of the elements of a cause of action" and that plaintiffs must "nudge[] their claims across the line from conceivable to plausible"). Even in decisions published after Iqbal andTwombly, the Rhode Island Supreme Court continues to ascribe to the notice pleading doctrine. See Barrette v. Yakavonis,966 A.2d 1231, 1234 (R.I. 2009) (avoiding Iqbal andTwombly by applying the standard that a "motion to dismiss is appropriate `when it is clear beyond a reasonable doubt
that the plaintiff would not be entitled to relief from the defendant under any set of facts that could be proven in support of the plaintiff's claim'") (emphasis added).
As such, current State of Rhode Island law simply requires that granting "a Rule 12(b)(6) motion to dismiss is appropriate `when it is clear beyond a reasonable doubt that the plaintiff would not be entitled to relief from the defendant under any setof facts that could be proven in support of the plaintiff's claim.'" Barrette, 966 A.2d at 1234 (quotingPalazzo, 944 A.2d at 149-50) (emphasis added). In making its determination, a court "assumes the allegations contained in the complaint to be true and views the facts in the light most favorable to the plaintiffs." Giuliano v. Pastina, Jr.,793 A.2d 1035, 1036-37 (R.I. 2002) (quoting Martin v.Howard, 784 A.2d 291, 297-98 (R.I. 2001)); see alsoBarrette, 966 A.2d at 1234. Finally, the Court may not look to matters outside of the pleadings on a motion to dismiss; but if the Court does go outside *Page 10 
the pleadings, it must automatically convert the motion into a motion for summary judgment with its distinct standard of review.See Coia v. Stephano, 511 A.2d 980 (R.I. 1986).
 C Motion For Summary Judgment — Rule 56
On a summary judgment motion, this Court reviews the evidence and draws all reasonable inferences in the light most favorable to the nonmoving party. Credit Union Central Falls v. Groff,966 A.2d 1262, 1267 (R.I. 2009) (quoting Lucier v. ImpactRecreation, Ltd., 864 A.2d 635, 638 (R.I. 2005)). "It is important to bear in mind that the `purpose of the summary judgment procedure is issue finding, not issue determination.'"Giuliano, 949 A.2d at 391 (quoting Industrial NationalBank v. Peloso, 121 R.I. 305, 307, 397 A.2d 1312, 1313 (1979)). "Summary judgment is appropriate if it is apparent that no material issues of fact exist and the moving party is entitled to judgment as a matter of law." Chavers v. Fleet Bank (RI), N.A.,844 A.2d 666, 669 (R.I. 2004). A party opposing a motion for summary judgment "`carries the burden of proving by competent evidence the existence of a disputed material issue of fact and cannot rest on allegations or denials in the pleadings or on conclusions or legal opinions.'" Id. at 669-70 (quoting United LendingCorp. v. City of Providence, 827 A.2d 626, 631 (R.I. 2003)).
 III Analysis A Motion To Dismiss All Counts for InsufficientService of Process Pursuant to Rule 12(b)(5)
In the instant Rule 12(b)(5) Motion to Dismiss, Defendant accurately states that Plaintiff filed his Complaint on August 21, 2009 and did not serve Defendant until March 12, 2010 — 203 days later. On its face, this appears to be a clear violation of Rule 4(l)'s 120-day service requirement. Super. R. Civ. P. 4(l) ("If a service of the summons and complaint is not made upon a defendant within 120 days afterthe commencement of the action the court upon motion *Page 11 
or on its own initiative after notice to the plaintiff, shalldismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.") (emphasis added).
However, Defendant fails to mention that Plaintiff attempted service on September 10, 11, 12, 15, and 25, 2009 at Defendant's Rhode Island residence in the Weetamoe Condominium Complex at varying times of day, but was unable to serve Defendant. Plaintiff acknowledged that Defendant also resides in Naples, Florida, but claimed that there was evidence of habitation at her Rhode Island residence during these five service attempts. This evidence indicated to Plaintiff that Defendant was purposely avoiding service in Rhode Island. As such, Plaintiff sought, and then on November 25, 2009, obtained permission from this Court to effect alternative "tack-on" service at Defendant's Rhode Island residence.
On March 12, 2010, Plaintiff succeeded in serving process on Defendant. Although this service was not completed within 120 days of the action's commencement on August 21, 2009, this Court nonetheless finds that Plaintiff did make multiple good faith attempts to serve Defendant well before the 120-day time limit. Such an effort constitutes good cause for the delay. Cf.Bowden v. Lombardi, 744 A.2d 402, 402 (R.I. 1999) (crediting "[t]he Superior Court hearing justice['s] reject[ion of] the reasons advanced by the plaintiff seeking to justify her failure to effect service upon the defendant within the Rule 4(1) 120 day deadline" because "opt[ing] to withhold service until her part in the investigation by the federal authorities concerning the alleged insurance fraud by the defendant had been completed" was not good cause for the delay); Brophy v. Schuldner,692 A.2d 693, 694 (R.I. 1997) (finding a delay of six months was unreasonable when plaintiff knew at time of accident that defendant was a college *Page 12 
student with a permanent address in New Jersey and could have effected service "on the registrar of motor vehicles and notice by certified mail to the defendant at his New Jersey address"). After filing the Complaint at the end of August 2009, Plaintiff promptly began his attempts to effect service in early September 2009. That Plaintiff initiated service attempts almost immediately after commencing suit is significant and distinguishes the instant Plaintiff's early and repeated efforts to effect service from theBrophy and Bowden plaintiffs who waited until the eleventh hour to try even a first attempt at serving their respective defendants.
Additionally persuasive was that Plaintiff legitimately attempted service upon Defendant is the fact that Plaintiff's constable noted the dates, times, and circumstances of his five service attempts.Cf. Ricci v. Ricci, 689 A.2d 1051, 1053 (R.I. 1997) (declining to find good cause for a seven and one-half month delay where the plaintiff did not seek alternative service and the constable "did not provide enough details and particulars concerning each occasion when service was unsuccessfully attempted"). Unlike theRicci plaintiff, the instant Plaintiff's constable provided information relative to the five instances he attempted to serve Defendant at her Rhode Island residence. This attention to detail by the constable gives further credence to Plaintiff's good faith effort to actually effect service upon Defendant.
Furthermore, if a defendant is avoiding service, a plaintiff can establish good cause by faulting the defendant's own actions as the reason for the delay. See Bunn,250 F.R.D. at 89 ("`Good cause is likely (but not always) to be found when the plaintiff's failure to complete service in timely fashion is a result of . . . defendant evad[ing] service of the process or engag[ing] in misleading conduct, [if] the plaintiff has acted diligently in trying to effect service or [if] there are understandable mitigating circumstance[s]. . . ." (quotingMcIsaac, 193 F. Supp. 2d at 383)). The "burden is on plaintiff to show good cause; simply raising a possibility [that *Page 13 
defendant was evading service] is not sufficient." Gucfa,865 A.2d at 332. For example, the Gucfa Court held that avoidance was not shown where the plaintiff attempted to serve the defendant by sending a single certified letter that went unclaimed a single time, several months after the complaint was filed initially. Id. Conversely here, the November 25, 2009 Order permitting Plaintiff to attempt alternative service strongly suggests that Defendant's own malfeasance was causing service to be delayed. Plaintiff first sought alternative service only after he made multiple attempts to serve Defendant at her home and noted that there was evidence of habitation at that Rhode Island location. This Court will credit the Order accordingly and find that Defendant was the cause of the delay.
Based on the foregoing, this Court finds that there was good cause for Plaintiff's failure to serve Defendant within 120 days of August 21, 2009. Accordingly, Plaintiff's Complaint is not dismissed for the failure to effect timely service.
 B Motion To Dismiss Count IV for the Failure To State aClaim Upon Which Relief May Be Granted Pursuantto Rule 12(b)(6)
In Count IV, Plaintiff alleges that Defendant committed tortious interference with contract by delaying Plaintiff's efforts to settle the PB-02-2517 litigation for over four years thereby postponing the ripening of Plaintiff's contractual right to the 40% incentive payment and by hiring putative co-counsel to defeat Plaintiff's right to the incentive payment altogether. The default rule for tortious interference with contract states that "[o]ne contracting party does not have a cause of action in interference against the other contracting party. . . . A party cannot interfere with its own contracts, so the tort can be committed only by a third party." 44B Am. Jur. 2d Interference § 7. Rhode Island adheres to this default principle. See Robertson Stephens, Inc. v. ChubbCorp., 473 F. Supp. 2d 265 (D.R.I. 2007) (applying Rhode Island law *Page 14 
and stating that "it is well-settled that a party cannot tortiously interfere with its own contract," but holding that an agent of a party can tortiously interfere if acting outside the scope of its authority); see also Ed Peters Jewelry Co., Inc. v. C J JewelryCo., Inc., 124 F.3d 252, 275 (1st Cir. 1997) (applying Rhode Island law and holding that "a party normally cannot `interfere' with his own contract," but articulating the exception to this rule where an agent-CEO acting in contravention to the best interests of the corporation and for her own personal benefit could be deemed a tortious interferer). Essentially, "tortious interference with contract applies only to parties outside the agreement" or to "noncontractual third-parties." URI CogenerationPartners, L.P. v. Bd. of Governors,915 F. Supp. 1267, 1289 (D. R.I. 1996).
Here, Defendant was a direct signatory to the 2003 Contract, arguably remains jointly and severally responsible for the contract terms, and does not fit into the "agent acting outside the scope of her authority" exception. Accordingly, it is beyond a reasonable doubt that this interference claim against her must be dismissed with prejudice. See Barrette,966 A.2d at 1234 ("[A] Rule 12(b)(6) motion to dismiss is appropriate `when it is clear beyond a reasonable doubt that the plaintiff would not be entitled to relief from the defendantunder any set of facts that could be proven in support of the plaintiff's claim.'" (quoting Palazzo, 944 A.2d 149-50)) (emphasis added). As such, this Court grants Defendant's Motion to Dismiss with respect to Count IV.
 C Motion To Dismiss or Motion for Summary Judgmentagainst Counts I, II, III Pursuantto Rule 12(b)(6) or Rule 56
Defendant presents two theories for disposing of Counts I, II, III with prejudice using either a Rule 12(b)(6) Motion to Dismiss or Rule 56 Motion for Summary Judgment. First, Defendant argues that Plaintiff has waived the instant breach of contract and quantum meruit *Page 15 
claims against Defendant because he failed to include Defendant as a party in the counterclaim against Weetamoe Association in the 08-7674 case. Defendant argues that Super. R. Civ. P. 13 and 19 of the Rules of Civil Procedure state that a necessary party, whose presence is required to afford complete relief as to a claim or counterclaim, must be joined or else the claims against that necessary party are considered waived and cannot be raised in a separate action. Defendant contends that as a joint and severally liable party to the 2003 Contract, she was a necessary party to the 08-7674 interpleader breach of contract counterclaim. She also claims that the transaction and occurrence of the 08-7674 interpleader counterclaim and the instant 09-4826 Complaint are identical. As such, Defendant concludes that because Plaintiff did not join Defendant to its breach of contract counterclaim against Weetamoe Association in the 08-7674 case, then Plaintiff cannot subsequently proceed against Defendant in the instant 09-4826 case on essentially these same counts — breach of contract (Count I), book account (Count II), or quantum meruit (Count III). As such, Defendant requests that this Court dismiss all three counts.
In her second theory, Defendant asserts that because Plaintiff already has counterclaimed against Weetamoe Association for breach of the 2003 Contract in the 08-7674 interpleader case, the Complaint against Defendant in 09-4836 is duplicative and actually intended to harass or intimidate Defendant. Defendant maintains that the instant 09-4826 Complaint is a violation of the Rhode Island Anti-SLAPP statute. G.L. 1956 § 9-33-1 et. seq. Defendant reminds this Court that Plaintiff can only recover his fees once, and the 08-7674 interpleader counterclaim forms the exact basis of the Complaint in the instant 09-4826 action. Essentially, Defendant argues that if Plaintiff prevails completely against Weetamoe Association in the 08-7674 interpleader counterclaim, then this instant suit against Defendant is moot. Furthermore, Defendant continues, the interpleader action meets the requirements for SLAPP protection because it is not *Page 16 
a sham case. She asserts that the 08-7674 interpleader action is an exercise of the Weetamoe Association's legitimate rights to petition the court for relief and involves a matter of public concern because it "pertains to the fiduciary duties of an attorney to his or her clients." (Def. Mem. at 5.) Accordingly, Defendant implores this Court to dismiss Counts I, II, and III pursuant to Rhode Island's Anti-SLAPP statute.
 1. Application of Rules 13[7] and 19 as aWaiver of Counts I, II, III
Defendant argues that because Plaintiff did not join her as a defendant to the counterclaim for breach of contract in the 08-7674 interpleader action, Plaintiff has waived his opportunity to proceed on any breach of contract claims against Defendant in this instant 09-4826 action. Defendant urges this Court to find that she was a Rule 19 necessary or indispensable party to the 08-7674 counterclaim, and her absence from the 08-7674 action now prevents Plaintiff from suing Defendant in this 09-4826 action. This Court disagrees primarily because Defendant was not a necessary or indispensable party to the 08-7674 counterclaim.
Federal Rules of Civil Procedure Rule 19 and our Superior Court Rules of Civil Procedure Rule 19 are practically identical. Each jurisdiction's rule describes the situation where a non-party is either so necessary or indispensable to reach judgment in a civil action that the non-party must be joined or else that action cannot proceed. Accordingly, this Court may consult case law from both Rhode Island and the federal courts in analyzing this instant Rule 19 issue. Crowe Countryside Realty Assocs., Co.,LLC v. Novare Engineers, Inc., 891 A.2d 838, 840 (R.I. 2006) *Page 17 
("This [C]ourt has stated previously that where the federal rule and our state rule of procedure are substantially similar, we will look to the Federal Courts for guidance or interpretation of our own rule."). The Rhode Island and Federal Rule 19 state in relevant part:
 (a) Persons to Be Joined if Feasible. A person who is subject to service of process shall be joined as a party in the action if
 (1) in the person's absence complete relief cannot be accorded among those already parties, or
 (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may
 (i) as a practical matter impair or impede the person's ability to protect that interest or
 (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the person's claimed interest. R.I. Super. Ct. R. Civ. P. 19.
 (a) Persons Required to Be Joined if Feasible.
 (1) Required Party. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
 (A) in that person's absence, the court cannot accord complete relief among existing parties; or
 (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
 (i) as a practical matter impair or impede the person's ability to protect the interest; or
 (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest. Fed.R.Civ.P. 19.
Our Rhode Island Supreme Court has stated that "true indispensable parties are only those whose interests could not be excluded from the terms or consequences of the judgment . . . as where the interests of the absent party are inextricably tied in to the cause . . . or where the relief really is sought against the absent party alone." Anderson v. Anderson,109 R.I. 204, 209-10, 283 A.2d 265, 268 (1971) (quotingStevens v. Loomis, 334 F.2d 775, 777 (1st Cir. 1964)). *Page 18 
"When faced with a claim that a litigant has failed to join an indispensable party, a trial justice, whenever possible, should avoid dismissing the complaint; but, in any event, he or she must examine the case to determine whether it can proceed to judgment without adding the party in question." Root v. Providence WaterSupply Bd., 850 A.2d 94, 100-01 (R.I. 2004). (citingAnderson, 109 R.I. at 215-16, 283 A.2d at 271). Basically, "if a judgment can be rendered affirmatively affecting the rights of the parties before the court without prejudicing the rights of interested persons who are not before the court, then such other parties may be defined as necessary rather than indispensable parties" and the matter may continue without them in the court's discretion. Burnham v. Washington Trust Co.,446 A.2d 769, 772 (R.I. 1982) ("Counsel's observations that an action may proceed in the absence of persons who would qualify merely as necessary or interested parties is correct.").
Though the above cases constitute authoritative Rule 19 analysis per Rhode Island law, this Court notes that the current, 1995-revised "Rule 19 lessens the court's reliance on imprecise and ill-defined terms such as `indispensable' and `necessary' by delineating specific, pragmatic factors that trial judges must apply when making determinations relating to joinder." Ronald J. Resmini,Rhode Island Civil Practice andProcedure, § 99, 102 (1997); see also Retirement Bd. ofEmployees' Retirement Sys. v. DiPrete,845 A.2d 270, 285 (R.I. 2004) ("This Court has adopted a `pragmatic approach' to determine whether a party is in fact indispensable to an action. . . . Under this approach, there is no fixed formula for determining whether a party is indispensable."). In interpreting the current version of Rule 19, our Supreme Court held that "if there may be a viable judgment having separable affirmative consequences with respect to parties before the court, and the inquiry is concerned solely with the inequities, in the light of the total circumstances, resulting from the inability to affect absent interested parties, then such other *Page 19 
parties should be defined as merely necessary, not indispensable."Abbatematteo v. State, 694 A.2d 738, 740 (R.I. 1997) (quotingDoreck v. Roderiques,120 R.I. 175, 180, 385 A.2d 1062, 1065 (1978)). Essentially, a court must examine whether complete relief could be afforded without the absent party, whether the absence of the party to the action will cause an impairment of that absent party's interest, or whether any of the current parties to the action will face multiple or inconsistent obligations due to the absence of the party in question. See Super. R. Civ. P. 19. "The purpose of this mandatory-joinder rule is to avoid duplicative litigation, potentially inconsistent results, and possible multiple recoveriesagainst the same defendants for related claims that can and should be resolved at the same time." Desjarlais v. USAA Ins.Co., 824 A.2d 1272, 1274 (R.I. 2003) (emphasis added). Though Rule 19 generally acts to dismiss an actionimmediately before the court if lacking an indispensable party, see Super. R. Civ. P. 12(b)(7), if a court finds that an indispensable party was not joined to an action and that action proceeded nonetheless, the court may deem all claims related to that action and the unjoined party are waived infuture cases. See Desjarlais, 824 A.2d at 1274 (granting summary judgment (i.e. waiving the claims) to an insurer because in a previous suit on the same facts against the same defendant-insurer, the derivative loss of consortium claims now raised by the previously non-party children were not joined against the insurer pursuant to Rule 19).
Here, this Court finds that the absence of Defendant from the 08-7674 counterclaim does not implicate any of the considerations of Rule 19. It was not imperative for Plaintiff to add Defendant to that 08-7674 counterclaim or else waive his right to proceed Defendant in the instant 09-4826 matter. First and foremost, unlikeDesjarlais, the defendants in 09-4826 and 08-7674 are not identical. In the instant case, 09-4826, the Defendant is Jennifer Poisson. In 08-7674, the counterclaim defendant is the Weetamoe Association. Additionally, complete relief *Page 20 
can be afforded in 08-7674 without instant Defendant; Defendant's own interests are not impaired due to her absence in 08-7674; and the other parties to the 08-7674 counterclaim are not subjected to multiple or inconsistent suits due to the absence of the instant Defendant in that case. See Super. R. Civ. P. 19(a). As such, 08-7674 may continue without prejudice even in the absence of Defendant, and Plaintiff may therefore proceed against Defendant in the instant 09-4826 case. This Court will further discussinfra the nonapplication of these prongs of Rule 19(a).
 i. Application of Rule 19(a)(1)
Because it is possible for the Weetamoe Association to provide complete relief to the instant Plaintiff in the 08-7674 counterclaim, Rule 19(a)(1) is not implicated. Super. R. Civ. P. 19(a)(1) ("A person who is subject to service of process shall be joined as a party in the action if: in the person's absence complete relief cannot be accorded among those already parties. . . ."). When there are jointly and severally liable parties, as is possible in tort or contract, the plaintiff may obtain a full judgment against a single defendant without having to join all jointly and severally responsible parties. See Adkins v. LaborReady, Inc., 205 F.R.D. 460, 463 (S.D. W. Va. 2001) ("The fact that a party [here, Weetamoe Association] may be jointly and severally liable for damages with a non-party [here, Defendant] does not make the non-party [here, Defendant] a necessary party [in the 08-7674 case].") Rhode Island cases — albeit only older cases exist — also adhere to this principle. See, e.g.,Whipp v. Casey, 21 R.I. 506, 45 A. 93 (R.I. 1900) (stating that "the principal is not a necessary party to an action against a surety on a joint and several bond"); New England CommercialBank v. Newport Steam Factory,6 R.I. 154, 1859 WL 3158 (R.I. 1859) (explaining that "[i]n the actions at law, by the demurrer for non-joinder of parties, the defendant raises the question of several or joint liability. If, as we contend, the construction, that each stockholder is liable as if he had personally made the contract, is the true *Page 21 
construction of the charter, then the demurrer must be overruled, and we take judgment at law for our debt against the defendants, either severally, or against all, they being the surviving partners of the company").
The absence of the instant Defendant in the 08-7674 counterclaim was not raised by Defendant, any other party, or sua sponte by this Court as a reason for dismissing the 08-7674 counterclaim. Accordingly, the absence of Defendant in 08-7674 should not prevent Plaintiff from pursuing a separate action against Defendant in this instant 09-4826 case. Just because Defendant and Weetamoe Association arguably are jointly and severally liable for Plaintiff's attorneys' fees and contingency pursuant to the 2003 Contract, it does not mean that Defendant is a necessary party to that 08-7674 counterclaim. See Jones KnittingCorp. v. A. M. Pullen Co., 50 F.R.D. 311, 315 (D.C.N.Y. 1970) ("It is well established that parties who are jointly and severally liable are not indispensable parties under Rule 19. . . . Such parties are classified as proper parties who may be joined, butwho have no substantive right to compeljoinder.") (emphasis added). As a jointly and severally liable party to the 2003 Contract, Weetamoe Association is able to afford complete relief to Defendant in the 08-7674 counterclaim. SeeTilcon Capaldi, Inc. v. Feldman, 249 F.3d 54, 61 (1st Cir. 2001) ("At common law, the phrase `joint and several' refers to the liability of multiple wrongdoers (typically, for torts). It means that damages are a single sum specified in the judgment, that each wrongdoer is liable for the full amount, but the wronged party cannot collect under the judgment more than the single sum. Joint liability (typically, for breach of contract) does not differ in these respects . . . each party jointly liable for a judgment for breach of contract is liable for the full amount."); see alsoMorgan v. Kobrin Securities, Inc.,649 F. Supp. at 1030-31 (stating that it was not necessary to join the corporation's directors as indispensable parties "because the corporation could give *Page 22 
adequate relief without the presence of the directors in the suit"). As such, because Weetamoe Association can afford complete relief to the instant Plaintiff in the 08-7674 counterclaim, the absence of the instant Defendant does not prejudice the instant Plaintiff. Rule 19(a)(1) does not prove that instant Defendant should have been joined to that counterclaim as a necessary or indispensable party.
In addition, even without joining instant Defendant to the 08-7674 counterclaim, instant Plaintiff could still seek owed attorneys' fees from the jointly and severally liable Defendant if the 08-7674 counterclaim against Weetamoe Association fails or does not garner Plaintiff the full $968,004.77 that he requests.See State v. Sutcliffe,16 R.I. 410, 410, 16 A. 710, 711 (R.I. 1889) ("In general, it has been said, "where a contract is joint and several, if the debt be considerable, it is now advisable to proceed separately, so that the creditor may thereby retain his legal remedies against each in case of the death of one or more of the parties. Of course the creditor is entitled to only one satisfaction, and when the judgment debt is paid by either party it is paid for both.") (internal citation omitted); see, e.g., Holland v.U.S., 86 Fed. Cl. 681, 691 (Fed. Cl. 2009) ("[A] joint and several contract "in legal effect, is double, that is, equivalent to independent contracts, founded upon one consideration, for performance severally and also for performance jointly, and distinct remedies upon the same instrument, treating it as a joint contract and as a several contract, may be pursued until satisfaction is fully obtained." (quoting Moore v. Rogers,19 Ill. 347 (1857))); Corcoran v. Martin,202 So.2d 16, 17 (Fla. App. 1967) ("[W]hen the contract was joint and several . . . nothing short of satisfaction would prevent the obligee from maintaining as many suits as there were obligors.");Sessions v. Johnson, 95 U.S. 347, 352 (1877) ("Joint wrong-doers may be sued separately; and the plaintiff may prosecute the same until the amount of the damages is ascertained by verdict, but the injured party can have only one satisfaction, the *Page 23 
rule being that he may make his election de melioribus damnis, which, when made, is conclusive in all subsequent proceedings."). The instant Plaintiff is the master of his 08-7674 counterclaim and can choose to sue each joint and several party separately.
Lastly, this Court notes that because instant Defendant wasnot a party to the 08-7674 suit, Plaintiff was not compelled to bring any breach of contract counterclaim actions against Defendant at that time. See Super. R. Civ. P. 13(a) ("A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposingparty, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim.") (emphasis added). Instant Defendant was not an opposing party to instant Plaintiff in the 08-7674 case. As such, Rule 13(a) is inapplicable.
 ii. Application of Rule 19(a)(2)(i)
Rule 19(a)(2)(i) states that "a person who is subject to service of process shall be joined as a party in the action if: . . . the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may as a practical matter impair or impede the person's ability to protect that interest. . . ." Though not expressly argued to this Court, Defendant could imply that because she was not included as a party to the 08-7674 counterclaim, collateral estoppel will cause her to lose the opportunity to make arguments regarding the viability of the 2003 Contract in this 09-4826 case. However, such an argument would be unavailing for two reasons.
First, Defendant was well aware of the 08-7674 counterclaim because she is the President of the Weetamoe Association — the 08-7674 counterclaim's defendant. Defendant could have easily moved to intervene due to her status as an interested party because her defenses and the main action "have a question of law or fact in common." Super. R. Civ. P. 24(a) (b). This *Page 24 
Court should not give Defendant a second chance to protect those interests if she chose not to protect them when she had a clear opportunity to do so. See Marteg Corp. v. Zoning Bd. of Review ofCity of Warwick, 425 A.2d 1240, 1243-44 (R.I. 1981) ("[T]he [unjoined party] cannot claim that their interests are being inadequately represented since this `inadequate representation' was caused by the conscious choice they made when they decided not to intervene."); see also Seward v. Johnson,27 R.I. 396, 62 A. 569, 571 (R.I. 1905) (denying relief to an individual who chose not "to avail himself of the opportunity to become a party to these proceedings").
Secondly, though collateral estoppel in the form of issue or claim preclusion has the potential of foreclosing Defendant's arguments against a finding of breach of contract in the instant 09-4826 case after the counterclaim and effect of the 2003 Contract are resolved against Weetamoe Association in 08-7674, "speculative concerns for issue preclusion are not sufficient bases for finding necessity under Rule 19(a)."Chicago Title Ins. Co. v. Natale, No. 08-3289 (JAG),2010 WL 1009794 *n. 6 (D.N.J. March 16, 2010); see also JanneyMontgomery Scott, Inc. v. Shepard Niles, Inc.,11 F.3d 399, 409 (3d Cir. 1993) ("Mere presentation of an argument that issue preclusion is possible is not enough to trigger Rule 19(a)(2)(i)."). Moreover, it is not certain that Defendant, as an individual, is in privity with Weetamoe Association, as the two parties may have different interests and defenses with respect to the interpretation of the 2003 Contract. See Johnson Johnson v. Coopervision, Inc.,720 F. Supp. 1116, 1124 (D. Del. 1989) (holding given the highly factual nature of privity analysis, it would be premature for a court — that is making a Rule 19 indispensable party determination — to decide whether the absent party is in privity for purpose of determining preclusive effect of the lawsuit). Given the potential that Weetamoe Association and Defendant's interests may be different seems to thwart the possibility *Page 25 
of privity and prevents collateral estoppel from affecting Defendant's opportunity to present defenses in the instant case even after the outcome of the 08-7674 counterclaim is determined.See Lennon v. Dacomed Corp., 901 A.2d 582, 591 (R.I. 2006) ("Parties are in privity when `there is a commonality of interest between the two entities' and when they `sufficiently represent' each other's interests." (quoting Duffy v. Milder,896 A.2d 27, 36 (R.I. 2006) (finding that "Dacomed, is clearly in privity with its parent corporation, Urohealth, which was a defendant in a [prior case]")). This collateral estoppel issue is especially moot with respect to the quantum meruit claim (Count III) against Defendant, which was not even raised against Weetamoe Association in the 08-7674 counterclaim and will not be decided therein. Because Defendant's shirked responsibility for protecting her interests in 08-7674 and because she will still have an opportunity to raise defenses to the 2003 Contract in the instant case regardless of collateral estoppel, Rule 19(a)(2)(i) is not implicated.
 iii. Application of Rule 19(a)(2)(ii)
Rule 19(a)(2)(ii) states that "[a] person who is subject to service of process shall be joined as a party in the action if . . . the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may . . . leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the person's claimed interest." Super. R. Civ. P. 19(a)(2)(ii). Again, the absence of Defendant in 08-7674 does not prejudice any other party in that case who, along with instant Defendant, were jointly and severally responsible for the 2003 Contract. This factor reaffirms that Defendant was not a necessary or indispensable party to 08-7674. *Page 26 
This Court acknowledges that resolution of the 08-7674 counterclaim may result in Weetamoe Association being held responsible for the entire amount of attorneys' fees and contingency payments due to its joint and several liability under the 2003 Contract. However, Weetamoe Association may still reserve the right to seek indemnification or contribution from the other unjoined, but equally joint and several parties to the 2003 Contract (namely, Defendant) if the full burden of attorneys' fees and contingency payment is so assessed to Weetamoe Association in the 08-7674 counterclaim. See Vint v. Element Payment Services,Inc., No. CV09-00078-PHX-DGC, 2009 WL 1749605 at *3 (D. Ariz. June 18, 2009) ("[C]ontribution is not always limited to joint tortfeasors. It can be available between coguarantuours and sureties who pay more than their pro rata share of a common liability" (citing 12 Williston on Contracts § 36:14 (4th ed.))); James M. Mock, Tort Law-New Mexico Adopts Proportional Indemnityand Clouds the Distinction Between Contract and Tort: AmrepSouthwest, Inc. v. Shollenbarger Wood Treating, Inc., 26 N.M. L. Rev. 603, 613 (1996) ("Like a defendant jointly and severally liable in tort, a defendant liable on a contract theory continues to be responsible for 100% of the plaintiff's awarded damages. AfterAmrep, however, a defendant liable in contract may seekproportional indemnity based on principles of comparative fault
in the same way a defendant jointly and severally liable in tort can seek comparative contribution.") (emphasis added). But see Bd. ofEduc. of Hudson City Sch. Dist. v. Sargent,517 N.E.2d 1360, 1365 (N.Y. 1987) ("Nor are we persuaded that we should create a common-law right of contribution in contract actions. . . . The policy considerations that underlay . . . the need to liberalize the inequitable and harsh rules that once governed contribution among joint tort-feasors . . . are not pertinent to contract matters. Parties to a contract have the power to specifically delineate the scope of their liability at the time the contract is formed. Thus, there is nothing unfair in defining a contracting party's *Page 27 
liability by the scope of its promise as reflected by the agreement of the parties."). Although there is conflicting case law in other jurisdictions, Rhode Island has not specifically decided this issue which means that Weetamoe Association at least has a reasonably likelihood of proceeding against Defendant for contribution outside the 08-7674 counterclaim if necessary. Because the Weetamoe Association (through its then-president Mr. Poisson) signed the 2003 Contract agreeing to joint and several liability, Rule 19(a)(2)(ii) is not implicated. Weetamoe Association is not subject to any additional liability that was not contemplated when it signed the 2003 Contract, and it can proceed against other joint and several parties for contribution if necessary.
 iv. Conclusion as to the Application of Rules 13 and 19
Based on the foregoing, because Defendant was not an indispensable or necessary party to 08-7674, instant Plaintiff was not responsible for adding her to the 08-7674 breach of contract counterclaim. As such, Plaintiff should not lose his opportunity to proceed against Defendant on the breach of contract claim in the instant case (Counts I and II). As for the quantum meruit allegation (Count III), Rule 19 cannot be used to require Defendant's presence in a claim that was not even raised against Weetamoe Association in the 08-7674 case. As such, Plaintiff does not lose his opportunity to proceed against the Defendant on the quantum meruit claim in the instant case.
 2. Application of Rhode Island's Anti-SLAPP Statute
In a last ditch effort to dispose of Counts I, II, and III, Defendant argues that Plaintiff's 09-4826 Complaint is a SLAPP suit that must be dismissed. Rhode Island's Limits on Strategic Litigation Against Public Participation Act (Anti-SLAPP statute) was enacted to "`prevent vexatious lawsuits against citizens who exercise their First Amendment rights of free speech and *Page 28 
legitimate petitioning'" under the United States and Rhode Island Constitutions "`by granting those activities conditional immunity from punitive civil claims.'" Palazzo, 944 A.2d at 150 (quoting Alves v. Hometown Newspapers, Inc.,857 A.2d 743, 752 (R.I. 2004))). The Legislature sought to curb the "disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." G.L. 1956 § 9-33-1. Essentially, this means if an individual exercises his or her "right of petition or of free speech under the United States or Rhode Island constitutions in connection with a matter ofpublic concern" and that petition is not a "sham," then that person is "conditionally immune from civil claims, counterclaims, or cross-claims" from a party seeking to silence the individual. Section 9-33-2. The Anti-SLAPP statute defines "a party's exercise of its right of petition or of free speech" as "any written or oral statement made before or submitted to a legislative, executive, or judicial body, or any other governmental proceeding; any written or oral statement made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other governmental proceeding; or any written or oral statement made in connection with an issue ofpublic concern." Section 9-33-2(e) (emphasis added).
The United States Supreme Court has defined issues of public concern as any issue "fairly considered as relating to any matter of political, social, or other concern to thecommunity." Connick v. Myers,461 U.S. 138, 146, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983) (emphasis added). Our Rhode Island case law is apposite to Connick and has interpreted a "matter of public concern" a number of times to hold that the original petition (the one requesting Anti-SLAPP statute protection) has to implicate the public, not a handful of condominium owners who are attempting to divide a settlement and determine the effect of an *Page 29 
attorneys' fee contract. For example, in Global Waste Recycling,Inc. v. Mallette, 762 A.2d 1208 (R.I. 2000), the Court held a group who had exercised their first amendment rights to complain to a newspaper about "alleged environmental problems with the plaintiff recycling plant" was protected against a defamation SLAPP suit filed by the recycling plant. Id. at 1209. The Court held that environmental problems clearly were an issue of public concern because they affected the whole community. Id. Likewise, inHometown Properties v. Fleming, 680 A.2d 56 (R.I. 1996), the Court held that a North Kingston resident, who had participated in a Department of Environmental Management (DEM) meeting regarding the plaintiff-landfill-owner's alleged groundwater contamination and had mailed follow-up correspondence to the state and federal officials criticizing the landfill's practices, was protected by the Anti-SLAPP statute. Id. at 58-59. The Court stated that groundwater contamination was a matter of public concern.Id. at 59.
Here, Defendant argues that the purpose of Plaintiff's instant suit is only meant to "punish [Defendant] for her role in Weetamoe [Association's] interpleader action" and therefore, she is due Anti-SLAPP statute protection. However, there are two infirmities plaguing Defendant's argument. The first problem is that the Weetamoe Association that petitioned this Court in the interpleader, not Defendant. In fact, when Weetamoe Association filed the 08-7674 action on December 5, 2008, Defendant was not involved in that suit whatsoever. Defendant's husband was the President of the Weetamoe Association. As such, Defendant's relationship, as an individual, with the interpleader action is remote. Second, the "right of petition" that Defendant believes is deserving of anti-SLAPP protection is the 08-7674 interpleader action. Defendant attempts to couch the interpleader as "an issue of great public concern in that it pertains to the fiduciary duties of an attorney to his or her clients" and "bearing upon such *Page 30 
fundamental public interest as access to justice and the public's confidence in our justice system." (Def. Mem. at 5.) However, this Court is not persuaded that the interpleader is a matter of public concern. Rather, this Court finds that the interpleader action it is a matter of personal concern of interest only to the members of the Weetamoe Association who want the settlement divided equitably. See Hoffman v. Davenport-Metcalf,851 A.2d 1083 (R.I. 2004) (holding that the "private causes of action [for eviction] and criminal complaints [for making multiple annoying crank telephone calls]" and are not "causes of action [that] involve issues of public concern sufficient to invoke the provisions of the anti-SLAPP statute."). Accordingly, as in theHoffman case, the Anti-SLAPP statute does not apply here.
 CONCLUSION
This Court finds that Plaintiff acted in good faith in his attempts to serve Defendant within 120 days of commencing this action. As such, this Court will not dismiss Plaintiff's suit for the failure to properly serve Defendant.
This Court must dismiss with prejudice the tortious interference with contract claim (Count IV) because Defendant is not a non-contractual third party. It is beyond a reasonable doubt that Plaintiff failed to state a claim upon which relief may be granted because tortious interference with a contract claims cannot lie against parties to the contract. Defendant is clearly a party who is joint and severally liable for the 2003 Contract.
Rule 19 does not cause a waiver of the breach of contract and quantum meruit claims (Counts I, II, III) against Defendant, a joint and several party to the 2003 Contract. By definition, Defendant is not indispensable to the interpleader counterclaim because Weetamoe Association, as a joint and several party, is able to afford Plaintiff all relief that is due to him. Plaintiff is the master of his Complaint and may select, at his discretion, which parties of those *Page 31 
that are jointly and severally liable to sue in the counterclaim. Furthermore, proceeding against a single joint and several party in one action does not extinguish Plaintiff's option of pursuing a separate action against any of the other jointly and severally liable parties. The only stipulation is that Plaintiff may only recover all that he is due one time. Because this Court has yet to render a final judgment regarding the Plaintiff's rights to the settlement res or pursuant to the 2003 Contract, it is permissible for Plaintiff to maintain this suit against the instant Defendant. Although Defendant alludes to an arguable collateral estoppel issue if Plaintiff proceeds in this suit against Defendant after 08-7674 is decided, it is not certain that Defendant and Weetamoe Association are in privity, which is a requirement for collateral estoppel to bar Defendant from making certain arguments regarding interpretation of the 2003 Contract. Without the preclusive effect of collateral estoppel, Defendant's interest in raising defenses to the 2003 Contract remain protected despite her absence from 08-7674. Finally, Plaintiff states a sustainable claim for quantum meruit against Defendant in this 09-4826 case because such a claim completely avoids an interpretation of the 2003 Contract and the breach of contract claims raised against Weetamoe Association in 08-7674 counterclaim. Defendant could not possibly claim that she is an indispensable party to a claim that was not even raised in the 08-7674 action.
Finally, the Anti-SLAPP statute does not apply because the interpleader action and the instant case do not implicate the same Defendants and because the interpleader suit is not a matter of public concern warranting Anti-SLAPP statute protection.
Counsel shall submit the appropriate judgment for entry reflecting the above holdings.
[1] Because Attorney Keven A. McKenna acted on behalf of Keven A. McKenna, P.C. in all respects relevant to the instant case, this Court, for convenience, uses the pronouns "he" and "his" throughout this decision when discussing Plaintiff.
[2] The Administrative Order of July 26, 2006 In Re: Dispositive Motions states that "objections and responses to dispositive motions shall be filed no less than 14 days before the scheduled hearingdate." (emphasis in original)
[3] Although not particularly relevant, Leilani Allen was dating Plaintiff during the events giving rise to this action.
[4] Defendant also disputes the $300/hour rate, but for the purposes of these Motions will assume that the $300/hour rate is correct. (Def. Memo at 1.)
[5] Prior to the 2003 Contract, the condominium parties only had a verbal fee agreement with Plaintiff, the terms of which are also disputed. Defendant claims that she agreed to renegotiate with Plaintiff for the additional 40% contingency because Plaintiff threatened to withdraw from representing the condominium parties in the title clearing action. Plaintiff explains that he had requested payment for all attorneys' fees allegedly accrued to date around this time in January 2003 ($119,640.05), but Defendant and Mr. Poisson refused to pay. (Pl.'s Dep. 150:13-20.) Preferring to avoid suing Defendant and Mr. Poisson for those fees accrued up to that point, Plaintiff instead opted to add a 40% settlement contingency to their fee agreement, which would render roughly the $119,640.05 in fees that allegedly was due from Defendant and Mr. Poisson. Id. Excepting that there may be contest for fraud or misrepresentation in their signing the 2003 Contract, Defendant and Mr. Poisson arguably agreed to the terms on the face of the 2003 Contract on January 25, 2003.
[6] Plaintiff had been performing legal services for Defendant and Mr. Poisson since February 2, 2002, before this 2003 Contract was signed; however there was no written agreement. Plaintiff states that he did not immediately memorialize the attorney-client relationship with a written fee agreement because he "didn't think of it." (Pl.'s Dep. 55:6-56:19.) Plaintiff also had been representing Leilani Allen on various matters since November 2001 but again, did not establish a written fee agreement with her until the 2003 Contract was signed in January 2003.Id.
[7] It is actually the analysis of Rule 19 that turns the outcome of this instant issue regarding mandatory joinder. All Rule 13(h) adds to the foray is that necessary parties are brought into acounterclaim pursuant to Rule 19 the same way that necessary parties are brought into a primary action pursuant to Rule 19.See Super. R. Civ. P. 13(h) ("When the presence of parties other than those to the original action is required for the granting of complete relief in the determination of a counterclaim or cross-claim, the court shall order them to be brought in as defendants as provided in these rules.").